# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## ELIHU GREGG *vs.* THE STATE.

### August Term, 1869.

1. It is the duty of the courts to separate witnesses, either in civil or criminal cases, if asked by either party, but the rule does not apply to attorneys or officers of the court.

2. In a trial upon an indictment for arson, the witnesses for the State, at the instance of the prisoner, were sworn and sent out of the court room, and at the same time the prisoner stated that he had no witnesses summoned. After the witnesses for the State were examined, a party was called as a witness for the prisoner who stated that he had been in the court room during a part of the trial and heard a part of the evidence, and it being objected that he was an incompetent witness, the court sustained the objection. HELD:

   I. That the witness was improperly excluded.

   II. That where a witness has been sworn and sent out, and by accident or design comes into the court room during the progress of the trial, he is not, for that reason, to be excluded, but it is matter going to his credit with the jury, of which they should be the sole judges, under the circumstances.

3. A party is indicted for burning a court house containing the records of the county. On the trial evidence is introduced by the State, to prove that a decree entered in the records which were burned, was had for the sale of the real estate of the accused, and that he said, when speaking about this decree "that he had three ways of heading the K. lawyers;" and also that he said that he had not got justice in K. in the suit about which the decree was had; and to another witness prior thereto, that the court house ought to be burned, and he would do it if the suit went against him. The defendant then offered to introduce, as rebutting testimony, a certificate of protection in bankruptcy granted to him, which the court, on objection being made, refused to permit to be read in evidence. HELD:

   That the court erred in the refusal, as the certificate should have gone to the jury to explain, as far as it might in the minds of the jury, the previous declaration of the prisoner that "he had three ways of heading the K. lawyers."

4. An offense punishable with death prior to April 1st, 1869, (the time when the new code took effect) was committed prior thereto, but the accused was not indicted and tried until after that date. The accused did not elect to be tried or punished by the law that took effect April 1st, 1869, and which provides that the jury may find a verdict and attach the death penalty thereto, or fix the term of imprisonment in the penitentiary for life, until after verdict rendered; and it is held that he ought to have elected to be tried and punished by the law as it existed subsequently to April 1, 1869, or the punishment will be determined according to the law as it existed at the time the offense was committed; and this election must be made before verdict rendered. And the jury having found a verdict of guilty, the court must sentence the accused according to the law existing at the time the offense was committed.

Elihu Gregg was indicted by a grand jury of Preston county, on the 12th day of July, 1869, for burning the court house of that county, whereby all the records and papers in the clerk's and recorder's offices of that county were totally destroyed, and also the dwelling house of one Peter Voltz.

The indictment contained four counts; the first alleged that the defendant, on the night of the 7th of March, 1869, and about the hour of 1 o'clock in the morning of that day, did feloniously, &c., set fire to and burn a certain dwelling house of one Peter Voltz, wherein Voltz and his family were then and there residing at the time of the burning.

The second count alleged that, the defendant did, on the night, &c., above mentioned, burn a certain house called and known as the court house of Preston county, which court house was then and there the dwelling house of one Peter Voltz.

The third count alleged that, the defendant did burn a certain building known as the public court house of Preston county, and that by the burning of the same did set fire to and burn a certain dwelling house of one Peter Voltz, situated in the basement story of the court house; Voltz and his family residing and sleeping at tne time in his dwelling house in the basement story of the court house.

The fourth count alleged that, the defendant burned the court house of Preston county, and that by the burning of

the same a certain dwelling house of one Hiram Vankirk, adjacent to the court house, was burned.

The defendant was put upon his trial and pleaded not guilty, and on the 19th of July, 1869, the jury brought in a verdict of guilty.

The defendant moved the court to set aside the verdict and grant a new trial, which was overruled, and the court sentenced the defendant to be hanged on the 3d day of September, 1869.

During the progress of the trial the defendant took eight bills of exception, but as they were not all considered by this court, only those considered need be here stated.

The third bill of exceptions states that the defendant "having no witnesses summoned for the trial," moved, after the jury was sworn, to exclude the witnesses for the State from the court room, and the court ordered "the witnesses for the State and the defendant" to retire from the court room. After the State had closed its evidence, the defendant called as a witness one Henry Boger, who was sworn to give evidence in the cause, and the prosecuting attorney inquired of him if he had been in the court room during the trial, to which he answered that he had been during a portion thereof; and on objection to the witness testifying being made by the prosecuting attorney, the court excluded him; and the defendant excepted.

The fourth bill of exceptions is as follows: "Be it remembered, that upon the trial of this cause, and after the evidence on part of the State had been closed; and after the State, for the purpose of proving the motive of the defendant for committing the crime for which he stands charged, had introduced James H. Carroll as a witness, whose testimony tended to prove that he was an attorney at law, that he had obtained a judgment against the defendant, Gregg, for one Samuel Summers; that he had brought a chancery suit to enforce said judgment; that there had been a decree in said suit directing the sale of defendant's real estate, and witness was appointed by decree, a commissioner for the purpose of making sale; that witness had advertised the

said land to be sold at the front door of the court house of Preston county, on Monday, March 8th, 1869; and after the State introduced Abraham Lee as a witness, whose testimony tended to prove that the defendant had said to witness, when speaking about his suit with Summers, and about defending said suit, 'I have three ways of heading the Kingwood lawyers;' and after the State had introduced Noah A. Tichenell, whose testimony tended to prove, that in a conversation which defendant had with witness, defendant had said that he had been badly treated in the Summers suit; that he had not got justice in Kingwood, and the town and court house ought to be burned; and said, with an oath, that he would do it if the suit went against him; and after the order in the suit in case of Summers vs. Gregg, directing the sale of defendant's land, had been introduced in evidence, to wit, in these words: 'West Virginia, ss:' &c.

"The defendant, for the purpose of rebutting the testimony so introduced on the part of the State, offered in evidence to the jury his certificate of protection in bankruptcy, which, with the endorsement thereon made, is in these words: 'Certificate of Protection,' &c.; [which certificate was dated the 16th of November, 1868,] to which the attorney for the State objected, as inadmissible as evidence to the jury, because the same was irrelevant and not properly authenticated; and the court sustained the said objection, and ruled out said evidence, so offered on part of the defendant, and would not permit the same to be read in evidence to the jury;" and the defendant again excepted.

The fifth bill was taken, because the court refused to instruct the jury to disregard the evidence on behalf of the State under each and every one of the counts in the indictment, because the same were faulty and bad, and because they did not charge any crime or offense.

The seventh bill was taken, because after the verdict had been rendered, the defendant moved the court to arrest the judgment and set aside the verdict, because the jury did not find or ascertain in their verdict what punishment was

to be inflicted on the defendant; because the court could not render any judgment or impose any sentence upon the defendant, the jury having failed to ascertain what punishment was to be inflicted; which motions the court overruled.

The eighth bill was taken, because the court sentenced the defendant to the death penalty.

The defendant obtained a writ of error and supersedeas from this court.

*Keck* and *Davenport* for the plaintiff in error.
*Attorney General Caldwell* for the State.

MAXWELL, J. I shall first consider the question made in the third assignment of error, arising on the defendant's third bill of exceptions. This bill of exceptions states that, "after the jury was sworn in this cause, the defendant having no witnesses summoned for the trial, moved the court that the witnesses for the State be excluded from the court room, and thereupon the court ordered the witnesses for the State and the defendant to retire from the court room—and afterwards, and during the progress of the trial, the State having closed the evidence on its part, the defendant, to maintain the said issue on his part, called as a witness in his behalf Henry Boger, who being sworn to give evidence in the case, the attorney for the State asked said witness if he had been in the court room during the trial, to which the said witness answered that he had been during a portion of the trial; the attorney for the State thereupon objecting to the witness giving testimony to the jury, and the court sustained the said objection, and refused to permit the said witness to testify on behalf of the defendant;" to which opinion of the court the defendant objected and excepted. I think it pretty well settled at this day in this country, that in all cases, whether civil or criminal, it is the duty of the courts to separate the witnesses if asked by either party. The rule does not apply to attorneys or officers of the courts.

In England, in cases of the crown, the rule is laid down

that, "Before the examination commences the *Crown* may *demand* that the witnesses should retire, in order to each being questioned in the absence of the others. And the same order will be made on the request of the defendant, but as matter of indulgence and not of right." 1 Chitty's Cr. L., 618, and authorities there cited.

As to whether a witness can be examined under the English rule who is in the court room in violation of an order separating the witnesses, different authors have said, and different judges have said and done different things. In Archibald's Cr. Prac. and Pl., vol. 1, p. 167, it is said: "If the witness does not withdraw when ordered, or afterwards returns into court before he is called for, and is present during the examination of some other witness, it is discretionary with the judge whether he will allow him to be examined or not."

In the case of *Beaman* vs. *Ellice*, 19 Eng Com. Law Rep., 537,—a civil case cited by the attorney general,—the witnesses had all been ordered out of court, but one of them came into court again and heard the evidence of another witness. The witness who had so come back into court was allowed to be examined as to such facts only as had not been spoken to by any other witness.

In the case of *Parker* vs. *McWilliams*, 19 Eng. Com. Law Rep., 204, a civil case cited by the counsel for the defendant, the court says that where a witness remains in court after an order for the witnesses on both sides to withdraw, it rests in the discretion of the judge whether such witness shall be heard; except in the Exchequer, where he is peremptorily excluded. In the case of *Rex* vs. *Colley & Sweet*, 22 Eng. Com. Law Rep., 325—cited by the defendants—the witnesses had been sent out, but one of them—a witness for the crown—returned into court and heard part of the evidence, and the court decided that he was competent to testify; but the crown afterwards waived its rights to examine the witness, and he was not examined. In a note to the case of *Beaman* vs. *Ellice*, appeared the following:

"In the case of *Rex* vs. *Brown*, which was a case of ar-

son, tried at Reading in 1831, one of the prisoner's witnesses had, on an order being given for witnesses to leave the court, gone out, but had afterwards come into court again. Patteกson, J., allowed him to be examined, notwithstanding that his evidence was objected to on the part of the prosecution." The only crown cases in which the question has been before the English court, so far as the diligence of counsel has been able to show, are the cases of *Rex* vs. *Colley* and *Rex* vs. *Brown*, and in both the cases the witness was held competent.

The American cases are not numerous on this question. In the case of *Grimes* vs. *Martin*—a civil case decided by the supreme court of Iowa in 1860—this question arose, and is stated and decided in the following concise language:

" The ground of objection to Snoddy's testimony, which was received, was the fact that he was in the court room at the time Martin, defendant and witness, testified, whose testimony he was called to contradict. If the witness disregarded the order of the court in the premises, he was guilty of a contempt for which he might be punished, but the act would not render him incompetent to testify. It might effect his credibility."

In the case of the *State* vs. *Sparrow*, 3 Murphy, the question was considered by the supreme court of North Carolina. The case was a prosecution for murder. The witnesses on both sides were sent out, and after all the witnesses sworn and sent out on both sides had been examined, the prosecution offered to examine a witness who had remained in the court house during the trial; defendant objected, but the court allowed it, and the defendant was convicted. The supreme court was composed of three judges, one of whom thought the witness was incompetent, and should not have been allowed to testify. The other two held that he was competent, and properly admitted, and they appear to have done so upon the ground that the English rule of sending out witnesses does not render them incompetent, but if it does, it is inconsistent with the constitution of North Carolina. One of the judges of the majority said:

" Whatever may be the consequence of an omission or refusal to obey the order of the court to name or send out the witnesses, I think the court is not authorized to reject a witness offered at the proper time, because he was not sent out. This would add another objection on the score of incompetency unknown in our law, as far as I can discover, for I have never yet read or heard of a witness being rejected on that account."

In the case of *Hopper and others* vs. *The Commonwealth*, 6 Gratt., 684,—prosecuted and convicted for robbery,—before any testimony had been offered on the trial, the witnesses on both sides were sworn and sent out. After the testimony for the State was closed, the prisoners offered a witness to whom the commonwealth objected, because he was a mulatto; and to sustain the objection offered a witness who had been in court during the whole trial, and who had not been sworn and sent out with the other witnesses. To the swearing of the witness, under the circumstances, the defendants objected, but the court allowed him to testify, which was one of the causes assigned for the writ of error. The general court refused the writ of error without assigning any reasons. No case has been cited, nor have I been able to find one in either England or this country, in which a witness for or against a prisoner has been excluded because he was in the court house and heard the other witnesses, in violation of an order sending the witnesses out. I think it clear, therefore, that upon · authority, the witness Boger was improperly excluded. But if the books were full of precedents excluding witnesses because they were in the court room in violation of orders sending them out, I should be of opinion, under the bill of rights and constitution of this State, that the witness was improperly excluded. The provision is "In all criminal trials the accused shall be informed of the character and cause of accusation, and be confronted with the witnesses against him; and shall have the assistance of counsel for his defence, and compulsory process for obtaining witnesses in his favor."

One of the judges in *Sparrow's case,* in reference to a

similar provision in the constitution of North Carolina, used the following reasonable and appropriate language: " This right secured by law must be claimed at the proper time and stage of the trial, and that is when the prisoner is called on to make his defence and offer his witnesses and proofs; and if it were in the power of the courts to prescribe rules for the introduction of witnesses, they might fetter down this privilege, or rather right, to nothing. The courts may prescribe rules to carry the law into execution, but not to prevent its execution. They can not by their rules exclude a party from a right, when that right is asserted at the time and in the manner contemplated by the law which gives that right."

When the witnesses are separated by order of the court, it is the duty of the court officers and parties to enforce the order and keep the witnesses out. If a witness should willfully come into the court house in violation of the order, the court should fine, or fine and imprison him for his contempt. And if necessary to enforce the order, the witnesses should be sent to jail. If a witness, by accident or design, gets into the court room, he is not, for that reason, to be excluded; but it is a matter going to his credit, of which the jury should be the sole judges under the circumstances of the case.

The next question raised is on the defendant's fourth bill of exceptions for excluding the certificate of bankruptcy. I think, under the circumstances disclosed in this bill of exceptions, the defendant was entitled to give in evidence the said certificate to explain, as far as it might in the minds of the jury, his previous declaration that he had " three ways of heading the Kingwood lawyers."

I propose to consider in the next place, the eighth assignment of error, which is that the "jury did not find in their verdict what punishment was to be inflicted upon the defendant."

According to the unpublished code of this State, as well as I can determine from the disconnected chapters which I have seen, there is but one offence to which the law fixes

the penalty of death, and that is the offence of murder in the first degree, when the jury does not see proper to say it shall be punished by confinement in the penitentiary for life; while the offence of treason and arson may be punished with death, or confinement in the penitentiary, at the discretion of the jury.

If a jury should find a prisoner guilty of murder in the first degree, and not designate the punishment, by force of the law the court would pronounce sentence of death upon him. But in case of treason, or arson, if a jury find a prisoner guilty and should fail to designate the punishment, the court could not pronounce sentence, because it is the discretion of the jury, and not of the court, which is to determine the punishment.

Under the law as it was before the first of April last, arson was punishable with death. In the case under consideration the offence is charged to have been committed before the first of April, and the jury have found the accused guilty, and the court has sentenced him to be executed. As the law was when the offence was committed, the sentence of the court would be correct; but is it correct under the law as it now is and was at the time of the trial?

The last chapter in the code puts in force all the provisions of the code, and repeals all acts of a general nature inconsistent therewith, and declares that such repeals, except when it is otherwise provided, shall not affect any act done or forfeiture incurred, before the first day of April, 1869, save only that the proceedings thereafter had shall conform as far as practicable, to the provisions of the foregoing chapters. In the 13th of the preceding chapters it is provided that the repeal of a law, or its expiration by virtue of any provision contained therein, shall not affect any offence committed, or penalty or punishment incurred, before the repeal took effect, or the law expired; save only that proceedings thereafter had, shall conform, as far as practicable, to the laws in force at the time such proceedings take place, unless otherwise specially provided; and that if any penalty or punishment be mitigated by the new

law, such new law may, with the consent of the party affected thereby, be applied to any judgment pronounced after it has taken effect.

The penalty or punishment is mitigated under the new law, and the accused was entitled to have judgment against him under the new law if he so elected; but such election ought to be made by him before the verdict of the jury is received and recorded, when, if he elected to be punished under the new law it would be the duty of the jury to say whether he should be punished with death or by confinement in the penitentiary for his life. The election can not be made after the jury renders its verdict, because the court has no power to mitigate the punishment. The accused not having consented before the jury rendered its verdict, to be punished according to the new law, the jury rendered their verdict according to the law in force when the offence was committed, which I think sufficient to justify the judgment of the court, because the law, and not the discretion of the court, ascertains the penalty, if the verdict is not insufficient for some other cause, upon which no opinion is expressed.

In respect to the points made as to the sufficiency of the indictment,—although the objection to the indictment is not properly raised on the motion to disregard the evidence,—I have examined the indictment, and while some of the counts are very inartificially drawn, I think it is substantially good.

The other points made by the defendant's counsel, and properly arising on the record, will not probably arise on another trial, and are not, therefore, considered, as the counsel for the defendant waive their consideration.

I am of opinion, for the errors shown in the defendant's third and fourth bills of exception, the judgment will have to be reversed, the verdict of the jury set aside, and the cause remanded for a new trial to be had.

BROWN, President. In addition to the errors set forth in the preceding opinion, I think there is another error in the

judgment complained of, viz: The third count in the indictment is bad in failing to aver the time when the dwelling house was burnt. The averment is that, on the night of the 7th of March, the prisoner set fire to and burned the court house, by which the dwelling house of one Peter Voltz was burned in the night time. It is not averred that the dwelling house, which was in the basement of the court house, was burned on the night of the seventh, but simply the fact that the burning of the court house on the seventh caused the burning of the dwelling house. Nor is it stated how long the burning of the court house continued before the dwelling house became inflamed. If the dwelling house was not burned till the first of April, the offence was under another law, and differently punished than if burnt before April. Time, then, was material, and it should have been stated distinctly, that the dwelling house was also burnt on the seventh, or some subsequent night.

BERKSHIRE, J., *dissentiente.* He was of opinion that there was no error in rejecting Gregg's certificate of protection in bankruptcy, and in excluding the testimony of the witness Boger. That the weight of authority is against the rule established by a majority of the court, and that at common law it was always discretionary with the judge to admit or reject witnesses who were present during the trial, or a part of it, in a case where they had been ordered to be separated; except in the exchequer court, where the court had no discretion, and such a witness was always excluded.

On the other questions in the case, he concurred in the opinion of Judge Maxwell.

JUDGMENT REVERSED.