GEORGE F. CAW, PLAINTIFF IN ERROR, v. THE PEOPLE OF THE STATE OF NEBRASKA, DEFENDANTS IN ERROR.

Criminal Law: EVIDENCE: RES GESTAE. Threats of the deceased towards the accused, which were made some time after the deceased had received the wound of which he died, constitute no part of the *res gestae*.

——— : CIRCUMSTANTIAL EVIDENCE. Testimony that the ground, just where the deceased was struck, was covered with stones or pieces of rock, *held* admissible, where the character of the wound on the skull indicated that it could not have been produced with the fist.

——— : STATUTES CONSTRUED. Provisions of the criminal code of 1866, that the jury, in all cases where the punishment shall be by confinement in the penitentiary, shall fix the term of imprisonment, are not affected by the enactment of the criminal code of 1873, where an offense is committed and an indictment laid under the former code. The proviso in the latter act, "that the manner of procedure, etc., shall be in accordance with the provisions of this code," is only intended to apply to matters merely formal, such as organization of juries, conduct of the trial, etc.

Practice in Criminal Cases: VERDICT. In the absence of a record showing the whole of the testimony submitted to the jury, the appellate court will presume that the verdict was abundantly supported by the evidence.

——— : INSTRUCTIONS TO JURY. Instructions asked for by the accused, which were predicated on the assumption that there was testimony from which the jury might find that the accused was first assaulted by the deceased, and in danger of being seriously beaten by him, there being nothing in the evidence to warrant such assumption, *held* to be properly refused.

——— : ———. Instructions containing mere abstract propositions of law, which could not arise upon the testimony, furnish no just ground for the reversal of a judgment; otherwise, if they were so worded as to lead the jury to infer the existence of a state of facts entirely at variance with the evidence. The court should not mislead the jury by directing their attention to a point upon which there is no testimony.

———— : ————. An instruction in these words, " the accused is presumed innocent until the contrary be proved, and if the evidence satisfies you, beyond a reasonable doubt, that he is not guilty of the charge alleged against him in the indictment, it is your duty to acquit," *held*, erroneous.

———— : SEPARATION OF JURY. A jury impaneled to try a prisoner upon an. indictment for murder, were allowed to separate during the progress of the trial. It did not appear that any of the jurors left the court room, though some of them held conversations with the spectators. Affidavits were filed to show that these conversations had no relation to the case on trial; *held* that the verdict should not be disturbed.

———— : ————. When the jury have been permitted to separate on the trial of a criminal cause, it will be presumed, unless the record discloses the contrary, that they were admonished by the court as required by *Section* 484, *p.* 830, *General Statutes*, 1873.

THE plaintiff in error was indicted for murder, tried and found guilty of manslaughter at the March term, A. D. 1873, of the district court of Richardson county. Upon the trial of the cause before Mr. Justice Gantt, sitting in that court, and a jury, the plaintiff in error testified on his own behalf that the deceased approached to within two feet of him; that the deceased had his right hand and fist drawn up towards his chest; that he, the prisoner, thought he saw a stick or club in the right hand of deceased, and that the deceased was about to strike him; that he then struck the deceased with his fist, hitting him somewhere on the head, and knocked him down, etc. It also appeared in evidence that there were loose rocks and pieces of stones lying round about where the crime was committed. A son of the deceased also testified that he was standing near the prisoner at the time the deceased came up; that deceased was walking at his usual gait, not in a threatening manner or attitude, that when deceased came within about two feet of the prisoner he spoke, saying, " George, if you have anything to say, say it to me;" that the prisoner then struck the deceased and he fell beside the lime box, and the prisoner jumped upon him.

The following instructions asked for on the part of the plaintiff in error, were refused by the court:

"If the jury believe from the evidence that William T. Blair made an assault upon the prisoner, then the prisoner was not bound to wait until Blair actually struck him, but under such circumstances the prisoner would have been justified in making use of sufficient force to repel the attack upon him."

"If the jury believe from the evidence that William T. Blair committed an assault upon the prisoner, or that he advanced upon the prisoner in a threatening manner, and came so near to him, and under such circumstances, as would have induced a man of ordinary firmness to believe that he was about to be struck by Blair, and that the prisoner did so believe and then struck the said Blair, only to protect himself against such expected blow, intending to use no more force than a man of ordinary firmness and prudence would have believed under the circumstances to be necessary for that purpose, then the jury will find the defendant not guilty, although they may believe that the prisoner used more force than was really necessary for that purpose."

All other material facts appear in the opinion of the court.

*E. W. Thomas* and *Schoenheit & Towle*, for plaintiff in error.

The evidence tended to prove that the deceased made the first assault; and that the prisoner, having reasonable ground to believe that the deceased was about to strike him, struck the deceased with his fist only, and not with a dangerous or deadly weapon, solely for the purpose of defending himself against such apprehended attack, using no more force than he believed necessary, or than a man of ordinary firmness would have believed necessary under

the circumstances. The evidence further tended to show that the wound on the head then received by the deceased, was the result of accident only, and was probably, occasioned by his falling upon a stone, or upon a sharp stake which were near the spot where he fell. There was no evidence that the prisoner made use of a dangerous or deadly weapon.

Many of the instructions given by the court would probably have been correct, if the evidence had shown conclusively that the prisoner made use of a dangerous or deadly weapon, or that he intended to kill the deceased, but we submit that the instructions given were inappropriate and incorrect under the proof in the case. We think the errors in the instructions arise from not making a distinction between the right of *perfect* and of *imperfect* defense as defined by Bishop in his work on Criminal Law. 1 *Bishop Cr. Law, Secs.* 840 *to* 860, 874.

The first instruction asked for by the defendant and refused by the court, was in substance, that if the jury should believe that the deceased made the first assault, the defendant was not bound to wait until he was actually struck, but would be justified in making use of sufficient force to repel the expected blow. The court erred in refusing to give this instruction. 1 *Bish. Cr. Law, Secs.* 867, 872. 3 *Black Com.,* 3 *to* 5. *Roscoe Cr. Ev.,* 260. *People v. Campbell,* 30 *Cal.,* 314. 2 *Archb. Cr. Prac.,* 282, *note. Scribner v. Beach,* 4 *Den.,* 450.

The third and fourth instructions asked for by the defendant and refused by the court, are based upon the proposition, that if the deceased advanced upon the defendant in such a threatening manner as would have induced a man of ordinary firmness to believe that he was about to be struck, and the defendant did so believe, and then struck the deceased only to defend himself, intending to use no more force that was necessary, or than a man of ordinary firmness would have believed neces-

sary under the circumstances, the prisoner could not be found guilty under the indictment. The court erred in refusing to give these instructions. 2 *Bish. Cr. Law*, *Sec.* 31, 32. *The State v. Davis*, 1 *Iredell*, 125. *Shorter v. The People*, 2 *N. Y.*, 193. *Hill v. Rogers*, 2 *Iowa*, 68. *The People v. Yslas*, 27 *Cal.*, 630. 2 *Whart. Cr. Law*, *Sec.* 1242–3. *The People v. Tannan*, 4 *Park. Cr. R.*, 514.

Whether the belief and reasonable grounds of belief existed or not, is a question of fact, and should have been submitted to the jury. *Meredith v. The Commonwealth*, 18 *B. Monroe*, 56.

When there is testimony tending to show that the defendant had reasonable grounds to believe, and did believe, that the deceased was about to strike him even if such testimony comes from the defendant alone, and is in conflict with all the other evidence in the case, the question should be submitted to the jury. *Commonwealth v. Woodward*, 102 *Mass.*, 160.

If the defendant had good cause to believe, and did believe that the deceased was assaulting him, and was about to strike him, then he had a right to use whatever force was necessary to repel the expected blow, short of using a deadly weapon, or of intentionally taking his life. If in the employment of necessary force the party resisting is killed, the homicide is not punishable. 1 *Bish. Cr. Law*, *Sec.* 861. *The State v. Merril*, 2 *Dev.* 269.

The court erred in instructing the jury as to the effect of threats by defendant against the deceased, as the bill of exceptions shows that there was no evidence whatever that the defendant had used such threats. Such instruction could have had no other effect than to mislead the jury.

The court erred in instructing the jury that if the evidence proved beyond a reasonable doubt that the defendant was not guilty of the charge it was their duty to

acquit. Such an instruction was calculated only to mislead the jury, and to produce an impression upon their minds that it was incumbent upon the defendant to prove his innocence.

The court erred in charging the jury that the defendant could not avail himself of the claim of self-defense, unless he had good cause to believe that the deceased was about to commit a known felony, and there was no reasonable way for the defendant to escape.

The court erred in excluding evidence as to declarations made by the deceased immediately after the blow was struck. 1 *General Ev. Sec.*, 108. *The People v. Yslas*, 27 *Cal.*, 630.

We think the court erred in instructing the jury to fix the term of imprisonment of the defendant. in the penitentiary. *Brown's Gen. Stat, Nebr.*, 832. *Id.*, 782.

In criminal cases the court are at least *quasi*-counsel for the deceased, and will overlook no defect in the record whether expressly assigned or not. *Reed v. The State*, 15 *Ohio*, 222.

*J. R. Webster, Attorney General*, for the People.

I.   This court will not review or consider alleged errors in the instructions of the court below, based upon the evidence heard at the trial. The entire evidence is not embodied in the record, and is not before the court. It will be presumed that there was evidence which would justify the charge, although it does not appear at large. *Homan v. Laboo*, 1 *Neb.*, 204, 208. *The Midland Pacific R. R. Co. v. McCartney*, 1 *Neb.*, 398, 403. *State v. Shelledy*, 8 *Iowa*, 477, 511.

II.   The first, third, and fourth instructions asked by the defendant, were properly refused. They were not, in the form asked, applicable to the particular case, and, though abstractly correct, were calculated to mislead the

jury. The instructions, as modified and given, were as favorable to the defendant as the evidence would justify so far as aught in the record appears. *The Commonwealth v. Drum*, 58 *Penn. St.*, 9, 21. *Stewart v. The State*, 1 *Ohio State*, 66, 71. *The Commonwealth v. Fox*, 7 *Gray*, 585, 586. *The State v. Trimmer*, 19 *Iowa*, 144, 148. *The State v. Wismark*, 36 *Mo.*, 592.

III. The alleged error in the charge which seemed, separately considered, to raise a presumption against innocence is fully cured by the context in immediate connection therewith, is not ambiguous and could not mislead the jury. *Hilliard on New Trials, Ch. XI*, §23, *and cases cited*. *Sheehan v. Dalyrmple*, 19 *Mich.*, 239, 243.

IV. The court did not err in instructing the jury that the apprehension of an impending assault would not support a plea of self-defense in a case of homicide, unless the slayer also had reasonable cause to apprehend, and did apprehend, the loss of his own life or grevious bodily harm. *Commonwealth v. Drum*, 58 *Penn. St.*, 9, 21. *People v. McLeod*, 1 *Hill*, 421. *Payne v. Comm.*, 1 *Metc. (Ky.)*, 370. *State v. Neeley*, 20 *Iowa*, 109. *Rippy v. State*, 1 *Head.*, 217.

V. The rejection of evidence offered by the defendant, of subsequent threats of the deceased, he then smarting under the injury, was no error. The threats or " declarations " were made after the event (a physician had been summoned and arrived at the house), and formed no part of the *res gestae;* they in no way show malice on the part of the deceased; they do not tend to prove that the deceased made the first assault, or was about to inflict or meditated inflicting serious injury upon the accused, or that his conduct gave the accused reasonable ground

to apprehend such injury at the time the mortal wound was inflicted.

Declarations of the injured person to be admissible as a part of the *res gestae* must be made at the time of, and with reference to the injury, and must tend to characterize the act. *State v. Shelledy*, 8 *Iowa*, 477, 506. *The Commonwealth v. McPike*, 3 *Cush.*, 181, 184. *Lund v. Tyngsboro*, 9 *Cush.*, 36, *and cases cited*. *Donnelly v. The State*, 2 *Dutch.*, 601, 612. *Elkins v. Hamilton*, 20 *Vt.*, 627, 630.

VI. The admissibility of declaration of persons as a part of the *res gestae*, is very much confided to the discretion of the judge who has become familiar with all the antecedents in the conduct of the cause, and is a matter with which this court will not lightly interfere. *Commonwealth v. McPike*, 3 *Cush.*, 181, 184. *Donnelly v. State*, 2 *Dutch.*, 601, 612.

VII. The evidence admitted for the state against objection of the defendant, falls into four heads: *First.* Declarations of the accused made at the time relative to the injury. *Second.* Declarations subsequent, of his belief of its dangerous and fatal character. *Third.* The surroundings of the place where the injury was done, the accessibility of stones, etc. *Fourth.* The character of the injury itself.

The first are clearly admissible as a part of the *res gestae*. The second show the belief of the deceased as to the fatal character of the wound. The third and fourth as circumstancial evidence, tending to show that the injury was inflicted with a stone or other hard and rough instrument, and was felonious.

VIII. The court committed no error in leaving to the jury the fixing of the term of imprisonment. The offense was committed, and the indictment laid, under

the former criminal code which assured to the accused not only a trial as to his guilt before a jury of the county, but also that such jury, in view of all the circumstances, should fix the term of his imprisonment.

*A. J. Weaver, District Attorney First Judicial District*, for the People.

I. When a bill of exceptions does not profess to set out all the evidence, it will be presumed that a state of facts existed, to which the instructions complained of were applicable. *Shaw v. The State*, 4 *Indiana*, 553.

II. It is no ground to reverse a judgment if there be error in one part of the charge, when the same is explained or corrected in some other part of the charge. *Uhl v. The People*, 5 *Parker's Criminal Rep.*, 410. *The People v. Robinson*, 2 *Id.*, 287, 302, 303.

III. It is no ground to reverse a judgment, even if the court should commit an error in laying down an abstract proposition of law, nor is it error because the court refuses to instruct upon points not reached by the evidence. *Shorter v. The People*, 2 *New York*, 202. *Stewart v. The State*, 1 *Ohio State*, 73.

IV. As to error complained of, in the separation of the jury. *See Evans v. The State*, 7 *Indiana*, 271.

V. When the ground of exception is that the verdict is not sustained by sufficient evidence, or is contrary to law, and the court has overruled a motion for a new trial made on that ground, the bill of exceptions shall set out *the* evidence. *General Statutes*, 1873, *Sec.* 482, *p.* 829.

VI. It was right for the jury to fix the term of imprisonment, as provided by the law in force at the

time the crime was committed. *Hartung v. The People*, 22 *New York*, 104. *Fletcher v. Peck*, 6 *Cranch*, 87–138.

VII.   The instructions asked for by the prisoner were properly refused, for if Caw believed himself about to be attacked, as supposed by the instructions asked for, his duty was to avoid the necessity of defending himself. *The People v. Sullivan*, 7 *New York*, 398.

LAKE, CH. J.

The plaintiff in error was indicted and tried for the crime of murder, found guilty of manslaughter, and sentenced to the penitentiary for the term of eight years.

Several exceptions were taken, on behalf of the plaintiff in error, during the trial in the district court, to the admission and rejection of certain testimony, but we perceive no just ground for complaint in this respect, as only a very small portion of the testimony was preserved in the bill of exceptions.

The record before us shows that the prisoner offered to prove that the deceased, some time after he received the wound of which he died, but during the same evening, made threats against the prisoner, and declared that " he could and would clean him out;" and that he made threats to go out and look for the prisoner and fight him. This testimony was rejected on motion of the district attorney, and, as we think, properly  It constituted no part of the *res gestæ*, and could shed no legitimate light on the transaction.

Again, it is objected that the State was permitted to prove that the ground just where the deceased was struck, was covered with stones or pieces of rock, left from building a wall under the house a short time before. This testimony was properly admitted.   The character of

the wound on the skull of the deceased, certainly indicated that it could not have been produced with the fist. It was a very important circumstance, and eminently proper to be shown to the jury that there was an article or substance at hand, with which the prisoner could have produced the wound of which the deceased died.

It is urged as ground of error, that the jury were permitted to fix the term of the defendant's imprisonment. The crime was committed before the taking effect of our present criminal code, under which the trial was conducted. In such cases it is provided that "no offense committed, and no fine, forfeiture, or penalty incurred under existing laws, previous to the taking effect of this code, shall be affected by the repeal of any such existing laws, but the punishment of such offenses, the recovery of such fines and forfeitures shall take place as if said laws repealed had remained in force; *provided*, that the manner of procedure for the enforcement or imposition of all such punishments, and the collection of all such fines and forfeitures, shall be in accordance, or as nearly in accordance with the provisions of this code as the nature of the case will admit." *General Statutes*, 782. By section 175 of the criminal code in force when this offense was committed, it is provided that "in all cases where the punishment shall be by confinement in the penitentiary, the jury shall say in their verdict for what term the offender shall be confined." *Rev. Statutes* 1866, page 632.

Under these two provisions it has been the practice, throughout the entire state, to permit the jury, in cases arising under our former code, to fix the term of imprisonment in the penitentiary, and we see no reason for interfering with such practice. Besides, we think this construction is the proper one, and strictly in conformity to the legislative will on the subject. Mark the language used: "No offense committed     *     *     *     or penalty

incurred, previous to the taking effect of this code, shall be affected by the repeal, etc., but the punishment of such offenses * * * * *shall take place as if said laws repealed had remained in force.*

It is true that under a proviso in the same section it is enacted, "that the manner of procedure for the enforcement or imposition of all such punishments * * * shall be in accordance with the provisions of this code (new code) as the nature of the case will admit." But this, evidently, was only intended to apply to matters *merely formal*, such as the organization of juries, mode of producing testimony, etc., in respect of which there is marked difference between the two codes.

It is also claimed that the verdict is not supported by the evidence. But this point cannot be considered here. We have no means of knowing what testimony the jury had before them. It was not preserved by bill of exceptions, which is necessary when the verdict is attacked on this ground. In the absence of a record showing the whole of the testimony submitted to the jury, this court will presume that the verdict was abundantly supported by the evidence. This rule is too well settled to need the citation of authorities in its support.

Several exceptions were also taken to the refusal of the court to give certain instructions to the jury, as requested by the prisoner's counsel. These instructions were predicated on the assumption, that there was testimony from which the jury might find that the prisoner was first assaulted by the deceased, and in danger of being seriously beaten by him unless he protected himself by striking. There is nothing in the testimony before us that warrants this assumption. There is nothing to show, or that even tends to show, that the prisoner had any reasonable apprehension of personal harm to himself at the hands of the deceased. Even his own testimony would not warrant such conclusion, while that of all the other witnesses abso-

lutely forbids it.   These instructions were rightly refused. It is not error to refuse an instruction upon a question of law which has no application to the case as made by the testimony.

Several instructions appear to have been given to the jury upon abstract propositions of law, to which exceptions were taken by the prisoner's counsel.   It is not claimed that these propositions were not correctly stated, but it is urged that being outside of the case it is error. We do not so understand the law.   Many cases are to be found wherein it is held that even an erroneous instruction, on a point entirely outside of the case as made by the evidence, furnishes no just ground for the reversal of a judgment otherwise correct.

In the case of *Stewart v. The State*, 1 *Ohio State*, 66, the court says: "It will also be admitted that, in a criminal as well as civil cause, before a judgment can be reversed for error in the charge to the jury, it must appear that some evidence was given tending to prove a state of case in which the charge would be material.   If the charge was upon a mere abstract question of law, that could not arise upon the testimony, and could not influence the jury, its character, however erroneous furnishes no ground to reverse the sentence."   And surely if an erroneous statement of the law, upon an abstract question, furnishes no just ground for the reversal of a judgment, a correct statement ought not to have that effect.

Undoubtedly if the instruction were so worded as to lead the jury to infer the existence of a state of facts, entirely at variance with the evidence, it would furnish a sufficient reason for setting aside the verdict.   The court should not mislead the jury by directing their attention to a point upon which there is no testimony.   *Snyder v. Wilt*, 15 *Penn. State*, 59.   *American Transportation Company v. Moore*, 5 *Mich.*, 368.

Among the several instructions given by the judge on

his own motion, we find the following: "I may now here further charge you as a general rule of law, that the accused is presumed innocent until the contrary be proved. *And if the evidence satisfies you, beyond a reasonable doubt, that he is not guilty of the charge alleged against him in the indictment, it is your duty to acquit.*"

We are satisfied that this instruction was given inadvertently, and although an exception was taken by the prisoners counsel, the attention of the judge could not have been particularly challenged thereto, else it would have been corrected. It doubtless resulted from an oversight.

But the instruction is clearly erroneous and had a direct tendency to prejudice the prisoner. In such case we are not at liberty to say, after a verdict of guilty, that he was not prejudiced, although we may be reasonably well assured that he was not.

Another objection urged upon our attention is, that during the progress of the trial the jury were permitted to separate. From the affidavits of Edwin S. Towle, A. Schoenheit and William Mast, it would appear that during the temporary absence of the judge, the jury did separate and intermingle somewhat with the spectators in and about the court room, and that two of their number held conversations with other persons during such separation.

The prosecution does not deny that the separation actually occurred at the time mentioned, but it is insisted, and several affidavits are filed to show that the separation was by direct permission of the court; that the jury during such separation were in charge of the bailiffs of the court, and that no improper conduct on the part of any one of them was indulged in. The two jurors who are charged with holding conversations, severally make affidavit that nothing at all improper took place, at least so far as they were concerned. They give the subject of the conversa-

tions complained of, and show very satisfactorily that it had no relation whatever to the case on trial, and in this they are supported by the persons with whom the conversations took place.

Our statute permits the separation of jurors, by consent of the court, in all criminal trials, at any time before the final submission of the cause; but it is required in such case " that they shall be admonished by the court that it is their duty not to converse with, or permit themselves to be addressed by any other person on the subject of the trial, etc." *General Statutes* 1873, *Sec.* 484, *page* 830.

There is nothing in the record to show that this admonition was not given, and in such case we are bound to presume that the court performed its duty in that regard.

But even if the jury were not admonished by the court on this particular occasion as to their duty in this respect, in view of the very full and satisfactory showing of what actually occurred, and what was said by the two jurors who engaged in conversation with outside parties during this brief separation, we are of opinion that the verdict should not, for that reason alone, be disturbed.

In the case of *The People v. Douglass*, 4 *Cowen*, 26, Judge Woodworth, in delivering the opinion of the court, said: " We cannot lay down any general rule for all cases like this which may arise. They will be attended with different circumstances. We do mean to be understood, however, as saying that the mere separation of the jury, *without any further abuse*, is not sufficient ground for setting aside a verdict."

There are several other objections in this record, which however, we do not care to notice. Save in the erroneous instruction given to the jury upon the law of reasonable doubt, before considered, we find nothing that calls for a

reversal of the judgment. But, because of that instruction, a new trial must be awarded to the plaintiff in error.

JUDGMENT ACCORDINGLY.

Mr. JUSTICE MAXWELL concurring.