Lake, Ch. J.
Several errors are assigned, but we shall content ourselves with noticing those only that were relied upon in the argument as ground for a reversal of the judgment.
I. During the formation of the trial jury, several exceptions were taken on behalf of the prisoner to the rulings of the judge, which call for a construction of Sec. -468, of the criminal code. And, on this point, it will suffice to take the case of a single juror for the purpose 'of giving our views of the scope and effect of this section, and the extent of its modification of the common law rule of the courts on this subject.
J. O. Corby was called into the'jury- box, and being examined on his voir dire said, that he had both formed and expressed an opinion as to the prisoner’s guilt. He said further, “I talked pretty loud when I heard of it ” (the assault). “ My opinion is based upon general rumor, and newspaper reports; think I could return a fair and impartial verdict. I think I could now, but 1 might possibly lean a little the other way.” This was very frank in the juror, and was a plain expression of some doubt in his own mind of 1ns ability to decide, impartially, between the state and the accused. He “ might lean a little the other way ” from an upright, impartial attitude;, but just how far; or in the direction of which •party, he did not inform the court.
Our constitution, in section eleven of the bill óf rightSj guarantees to every person accused of crime, “a speedy, public trial, by an impartial jury of the county, or dis *550 trict in which the offense is alleged to ham been committedThis is the paramount law, and if the section of the statute under consideration could be said to be in conflict with it, in any particular, to that extent the statute would of course be inoperative. But we fail to perceive any conflict between these two laws, and we regard them as being in full harmony with each other. The statute, if properly interpreted, requires the utmost care and fairness in the selection of jurors in criminal trial.
If a person called as a juror “has formed, 01' expressed, an opinion as to the guilt or innocence of the accused,” and nothing further be shown, it is good ground, under this statute, for challenge for cause. And before the court would be justified in overruling such challenge, and in retaining the juror, it must appear that he is clearly within the exception to the general rule of disqualification just stated, which is, — •“Provided, that if a juror shall state that he has formed or expressed an opinion as to the guilt or innocence of the accused, the court shall thereupon proceed to examine on oath such juror as to the ground of such opinion; and if it shall appear to have been founded upon reading newspaper statements, communications, comments or reports, or upon rumor or hearsay, and not upon conversation with witnesses of the transaction, or reading reports of tlieir testimony, or hearing them testify, and the juror shall say, on oath, that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that said juror is impartial and will render such verdict, may in its discretion admit such juror as competent to serve in such case.”
■ We think it is clear that where the ground of challenge is the formation, or expression, of an opinion by the juror, before the court can exercise any discretion as to his retention upon the panel, it must be shown by an examination of the juror, on his oath, not only that his *551 opinion was formed solely in the manner stated in 'this proviso, but, in addition to this, the. juror must swear, unequivocally “ that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence.” If he express the least doubt of his abib ity to do so he should not, in the face of a challenge for cause, be retained. And even where by his formal answers, the juror brings himself within the letter of the statutory qualification, if the court should discover' the least sympton of prejudice or unfairness, or an evident desire to sit in the case he should, in justice both to the state and the accused, be rejected.
The juror Corby was of opinion that he “might lean .a little the other way,” that is, against the return of an impartial verdict. But it is altogether immaterial whether he leaned little or much. To render him competent he must not lean at all, neither for, nor against the one party or the other. No inquiry can be entered upon, as to the extent of a juror’s bias or prejudice; if he be not certain of their non-existence he ought not to be permitted to sit upon the jury in any case.
Ye are of opinion that Corby’s examination showed him to be disqualified. But he was retained against the challenge of the accused, who was compelled to resort to one of his peremptory challenges for his removal. In this there was error to the prejudice of the prisoner.
The examinations of several other of the jurors, who were challenged for cause on the ground of the formation of-opinions; are far from satisfactory. One of the positive requirements of this proviso is, that the juror’s opinion must be shown, affirmatively, not to have been formed from “conversations with witnesses of the transaction”' to which it relates. But the jurors to whom we now refer answered simply that the persons with whom they conversed, and from whom they derived their information, “ did not claim to be witnesses of the transaction.” *552 For’aught that is disclosed, they may have been eyewitnesses of the entire affray, or, at least, the jurors may .have supposed they were from the character of the communications made, which would have been equally objectionable and fatal to their qualification to sit in the case.
But the change wrought in the practice, by this section of the statute, as to the qualifications of jurors in criminal cases, is not so extremely radical as might perhaps seem at first blush. The strictness that formerly obtained in many of the courts, and which still continue in those of some of the states, had been considerably modified in our own when this statute was enacted. In our district courts the rule obtained pretty generally, we believe, that the formation or expression of a merely hypothetical opinion as to the guilt or innocence of the accused, dependent upon a particular state of facts, as to the existence of which the juror had formed no opinion, was not good ground for challenge. And such seems to have been the holding of the courts in Ohio, Virginia, Alabama, Mississippi, Tennessee, Indiana, Illinois, and in several other of our sister states. Especially was this the rule where such hypothetical opinion left no bias or prejudice on the jurors’ mind, which would prevent him from being entirely open to conviction by the testimony produced upon the trial. See Gardner v. The People, 3 Scam., 88. State v. Johnson, 1 Walker (Miss.), 392. McGregg v. The State, 4 Black., 406. State v. Williams, 3 Stewart, 454. Pierce v. State, 13 N. H., 536. Leoffner v. The State, 10 Ohio State, 538. State v. Wright, 53 Maine, 328. But in New York and Massachusetts it has been held, and it is probably the rule, “ that the formation of an opinion, based entirely on the assumption that a particular state of facts as given by rumor is correct,” disqualifies the juror. People v. Mather, 4 Wend., 229. Com. v. Knapp, 9 Pick., 496.
If, however, the opinion of a juror, based upon news *553 jpaper statements or common rumor, be not merely hypothetical but-decided and so fixed as to require testimony to overcome it, should he be retained if challenged for that reason? We think not. Surely such a juror cannot be said to stand impartial between the parties, and to hold him to be competent would in our opinion violate not only the constitutional guarantee of a fair.and impartial jury, but also the spirit, if not the letter, of the section of the statute above quoted. It is true that where the juror’s opinion shall be shown to have been formed in a certain specified manner, the statute provides that the court, if satisfied the juror is impartial and will render a verdict according to the law and the evidence, “may in its discretion” admit the juror as competent to serve. But in the exercise of a sound discretion, how ■would it be possible to reach the conclusion that a juror, who, without any qualification whatever, declares that he has a fixed and abiding conviction of the prisoner’s guilt which would require evidence to remove, can be fair and impartial between the state and the accused? Would it not rather be an abuse of judicial discretion to so hold? It is very clear that a panel composed of such jurors would fall far short of fulfilling the legal requirement of a.fair and impartial jury, to which an accused person is entitled.
II. It is also assigned for error that certain instructions to the jury, as requested by defendant’s counsel, were refused. But we discover no error in the action of the court in this particular. All, save one, of these instructions were given substantially in the charge prepared by the court on its own motion, and it was not error to refuse to repeat them, although expressed in language somewhat different from that used by the court.' Bond v. The State, 23 O. S., 356. As to the first instruction requested, and which the court refused to give, it was very clearly erroneous. It was based upon *554 the idea that before a conviction could be had, it was necessary that all the essential ingredients (except the death of the person assaulted) to constitute murder in the first degree, should be found to exist. The indictment, it is true, charges that the assault as made was characterized by all these requisites; that it was made not only purposely and maliciously, but of deliberate and premeditated malice. It charged upon the prisoner all the criminal qualities of heart found in one who commits the highest grade of criminal homicide, murder in the first degree. In this respect however, more was alleged than was necessary under the statute which defines the crime charged.
Section 14 of the crimes act provides that “if any person shall assault another with intent to commit a mv/rder, * * * * upon the person so assaulted, every person so offending shall be imprisoned in the penitentiary not more than fifteen, nor less than two years.” It will be noticed that this section does not limit the word “murder” to either one of the two degrees recognized in our law. All that is required to make the offense complete is, that the assault be made with intent to murder the person assaulted. In an indictment for this offense it is necessary to charge the assault as having been made purposely and maliciously at least. Such an assault, if death ensue, therefore, would be murder in the second degree. But it is no objection to an indictment, even where the facts as proved on the trial go no further than this, that it also charges the malice to have been deliberate and premeditated. Even in the case of an indictment for murder in the Jk'st degree, a conviction for murder in the second degree, or manslaughter, will be sustained.
III. To the instructions as given by the court to the jury on its own motion, no. exception appears to have been taken, and it was urged by the district attorney *555 tliat for this reason, no advantage could now be taken of any error therein. This as a general rule is true, in criminal as well as in civil cases. But as we have already held during the present term in the case of Thompson v. The People, this rule is not of universal application, especially in cases of felony where if the instructions are properly preserved, and are legitimately before us, and it is apparent that a radical error was committed, which in any view of the case must have been prejudicial to the prisoner, we regard it as our plain duty to correct it, even if there were a failure to except. These instructions were in writing, and are legitimately before us.
Among the several principles of law laid before the jury for their guidance, and which with the exceptions presently to be noticed -were correct, and eminently just to the prisoner, are two, to -which we cannot give our assent, and which could not have failed as we think to greatly prejudice the defense with the jury. On the subject of intent, which without doubt was the vital question in this case, as the assault seems to have been admitted, this instruction was given: “In considering the question of intent, it is proper to bear in mind this rule: Every person is presumed to contemplate and intend the ordinary, natural, and probable consequences of his own acts.” This is doubtless correct, but in making the application of the rule this language is used: “If therefore, a person willfully does an act which has a direct tendency to destroy another’s life, the natural and necessary conclusion from the act is that he intended to destroy such person’s life.” The same language was used by the court in the case of Commonwealth v. York, 9 Met., 103, in commenting on the presumption arising from the act of killing, where no other fact or circumstance was shown. In such a case the rule here asserted would doubtless be correct, but where as in the case before us death was not produced, but only a . serious *556 bodily injury, while under all the facts and circumstances the intention to take the life of the person assailed might have been a reasonable presumption, it was not necessarily the only one.
The correct rule undoubtedly is, that a person is presumed to intend to do, that which he voluntarily and willfully does in fact do. Com. v. Webster, 5 Cush., 295. But if the intent is to be carried beyond the result actually produced by the acts of the accused, it will be necessary to introduce evidence which would justify the jury in so finding. The fault in this instruction lies in the restriction of the jury to the single presumption of an intent to destroy life, when it may have been quite as reasonable to have presumed that only great bodily harm, the act really done, was in fact intended. Indeed, it was only by a consideration of all the facts and circumstances, bearing legitimately upon the case, that the jury would have been justified in presuming more than this. Under this instruction however, the jury were not permitted to limit the intent to the commission of bodjly harm; nothing short of an intent to destroy life would answer. The jury were thus deprived of the right to exercise that discretion which clearly belonged to them. That the direct tendency of this was to prejudice the prisoner cannot be doubted.
IY. The jury were further instructed: “Upon this question of intent you may also consider the character of the weapon used by the defendant, and if you find that a dangerous and deadly weapon was willfully used, with a violence sufficient to produce death, you have the right to infer from that fact the intention to p>roduce death.” In this there was an assumption not warranted by the facts of the case, which is error. The blows were not sufficient to produce death, although they may have been well calculated to cause that result. Where the charge of the court is wholly unsupported by the evidence, and *557 calculated to mislead the jury, as this undoubtedly was, tlxe judgment should be reversed. And this is the rule even in a civil case. Meredith v. Kenncord, 1 Neb., 812. Caw v. The People, 3 Neb., 357.
Y. As to the sufficiency of the testimony to sustain a conviction, we shall express no opinion whatever. That is a question for the jury to determine, under proper instructions from the court, uninfluenced by any suggestions on our part.
The judgment of the district court must he reversed, and a new trial awarded.
Reversed and remanded.