# CHARLESTON.

## STATE *v.* JAMES MUNCEY

### (No. 5606)

Submitted October 26, 1926.   Decided November 9, 1926.

1. CRIMINAL LAW—

   Error not specified on a motion for a new trial or not made the subject of a special bill of exceptions, will be treated as waived.   (p. 464.)

2. SAME—GRAND JURY—*Statutes Relating to Drawing Grand Jury Are Directory Rather than Mandatory; Technical Departure -from Mode of Procedure by Court in Drawing Grand Jury, Where Prisoner is Not Prejudiced, is Not Ground for Reversal; That Clerk of Court Instead of Jury Commissioners Drew Names of Grand Jury from Box is Not Reversible Error; in Absence of Showing of Prejudice to Defendant (Code, c. 157, §§ 1, 12).*

   The general purpose of the statutes relating to the drawing of grand juries is to expedite and not to hamper the administration of justice—hence they are directory rather than mandatory.   While courts should use meticulous care to follow the statute, a technical departure from the mode of procedure by the court in such drawing, where the prisoner has not been shown to have been prejudiced thereby, will not be ground for reversal.   (p. 465.)

3. HOMICIDE—*In Prosecution for Murder, Evidence of Malice Held Sufficient to Warrant Instructions Relating Thereto.*

   A case where the instructions given on behalf of the state were warranted by the evidence.   (p. 466.)

4. CRIMINAL LAW—*In Prosecution for Murder, Oral Answers by Court to Questions of Jury as to Verdicts They Might Find Are Proper (Code, c. 131, § 22).*

   Oral answers by the trial court to questions of the jury relative to the verdicts they might find under the indictment and the evidence in a murder case are proper, and are not in violation of § 22, Ch. 131, Code, requiring instructions to be in writing.   (p. 467.)

5. SAME—*Mere Separation of Jury Does Not Entitle Defendant to New Trial; if There has Been Improper Separation of Jury During Trial, Burden is on Prosecution to Show That Defendant Has Suffered no Injury Therefrom, or Convic-*

*tion Will be Set Aside; in Prosecution for Murder, Separation of Jury During Trial Held Reversible Error.*

A mere separation of the jury will not entitle the defendant in a murder case to a new trial; but where, in such case, there has been an improper separation of the jury during the trial, if the verdict is against the prisoner, he is entitled to the benefit of the presumption that such separation has been prejudicial to him, and the burden of proof is upon the prosecution to show beyond a reasonable doubt that the prisoner has suffered no injury by reason of the separation. If the prosecution fails to do this, the verdict will be set aside. *State* v. *Robinson,* 20 W. Va. 721; *State* v. *Cartright,* 20 W. Va. 32; *State* v. *Harrison,* 36 W. Va. 729; *State* v. *Cotts,* 49 W. Va. 615; *State* v. *Clark,* 51 W. Va. 457; *State* v. *Cottrill,* 52 W. Va. 363.   (p. 467.)

Error to Circuit Court, Mingo County.

James Muncey was convicted of second degree murder, and he brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*James Damron* and *G. R. C. Wiles,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

WOODS, JUDGE:

James Muncey was indicted by a special grand jury at the April Term, 1925, of the circuit court of Mingo County, for the murder of Sherman Parsley. He was tried at the July Term, 1925, found guilty of murder in the second degree and sentenced to eighteen years' imprisonment.

As the case turns on purely questions of law, the following brief statement of the facts will suffice. On the 19th day of May, 1925, a special election was held in the town of Kermit, in Kermit District, for the ratification or rejection of an Independent School District for said town. Feeling ran high amongst the electorate. The deputy sheriffs of the county and district, who were present, opposed, while the town police of Kermit favored, ratification. In the afternoon of said day, and shortly after several officers, including Muncey, had disarmed a town officer, who had attempted to arrest one of their number for knocking down a private citizen, Town Policeman

Ken Chapman appeared at the voting place. Ken Kirk, one of the deputy sheriffs, mét Chapman, and a quarrel ensued, whereupon Sherman Parsley admonished peace. Ken Kirk drew his gun on Chapman, and Parsley, to prevent Kirk's shooting Chapman, struck Kirk's hand, thereby causing the ball to hit the ground. A melee ensued, and some fifty to seventy shots were fired. Parsley and another man were killed, and several of the participants wounded. As to exactly what took place and who shot Parsley, the evidence for the State and the defendant is in sharp conflict. According to a number of State's witnesses, Muncey, the defendant, leveled his gun on Parsley, after the latter had struck Kirk's hand, and shot him through the back, killing him. Some testified to seeing the smoke from defendant's gun, which was pointed directly towards the back of Parsley, saw the dust fly out of Parsley's coat when shot, and saw him fall. A number of these witnesses had previously seen defendant with two guns in his hands, swearing that he was "the meanest man in seven States." The defendant denies shooting the deceased and claims he was a friend to him, and he and a number of his witnesses testify to the fact that Ken Chapman, the town policeman, was the party who actually shot and killed the deceased.

Numerous errors as to the admission of testimony were set out in proper bills of exception, but as they were not called to the attention of the lower court on the motion to set aside the verdict, were waived. *State* v. *Jones,* 77 W. Va. 636; *State* v. *Henaghan,* 73 W. Va. 706.

On the hearing the defendant relied upon the following errors for reversal: (1) Refusál of the court to abate and quash the indictment; (2) refusal to sustain his challenge to the array of the trial jury and to quash the entire panel; (3) the giving of the State's instructions numbers one and two; (4) because the court orally instructed the jury as to the different verdicts they might find; and (5) because the trial jury were not kept together during the trial, as required by law.

The challenge to the legality of the grand jury was raised by a proper plea in abatement. The plea set out that the circuit court on the 22nd day of May, 1925, by an order entered in law order book, directed a special grand jury to be summoned to attend upon the court three days later. By this order the clerk of said court was directed to draw and select from the grand jury list sixteen qualified grand jurors to attend on the day set. Pursuant to this order, the said clerk, in the presence of the presiding judge, drew from the grand jury box the names of sixteen jurors to attend as aforesaid. The jury commissioners were not summoned to attend and did not attend and select said grand jury or in any manner participate therein. On the day stated in the order, fourteen of said grand jurors drawn as aforesaid appeared, and the two vacancies were filled by special jury commissioners as the law directs. The irregularity relied on is that the clerk drew the grand jury from the box instead of such drawing being made by the jury commissioners. Section 1, chapter 157, Code, in part reads as follows: "Any circuit court may at a special or regular term thereof, whenever it shall be proper to do so, order a grand jury to be drawn and to attend such term." It was under this authority that the grand jury in question was drawn. It will be noted that this section does not define the manner of its selection. True, the following section provides: "The jury commissioners appointed under the provisions of section three of chapter one hundred and sixteen of the code, shall select and draw persons for grand juries." And section three, of said chapter, gives the court, or judge thereof, power to "require said jury commissioners to appear forthwith, or at any specified time, and select grand jurors for either a regular or special term of court." It may reasonably be inferred that the jury commissioners were the proper ones to make the drawing here. But shall we quash the indictment? We have held frequently that the statutes providing the method of summoning grand juries are directory. *State* v. *Taylor,* 57 W. Va. 228; *State* v. *Hoke,* 76 W. Va. 36; *State* v. *Wetzel,* 75 W. Va. 7; *State* v. *Driver,* 88 W. Va. 480; *State* v. *Austin,* 93 W. Va. 704. This is on the theory that it is

merely an accusing body, and the liberty of the citizens does not require that nice inquiry should be made into the manner in which it was organized. Thompson & Merriam on Juries, § 140; *State* v. *Austin, supra.* Its selection was protected from technical attacks thereon by the statute providing that "no presentment or indictment shall be quashed or abated on account of the incompetency or disqualification of any one or more of the grand jurors who found the same." Code, Ch. 157, § 12. There is no charge here that the jury was not properly selected by the jury commissioners and placed in the box, and that the box had not been kept in the manner provided by law. The act complained of was merely ministerial. It was performed under the direction of and in the presence of the court. How could the prisoner have been prejudiced? As Judge BRANNON said in *Eastham* v. *Holt,* 43 W. Va. 603: "A large discretion is here given the court for the administration of justice." This court said in *State* v. *Price,* 92 W. Va. 542: "Ordinarily, a statute providing simply a mode of procedure will be held to be directory, and if the thing intended is done in some other way than that provided by the statute it will be valid, unless the statute in express terms provides that it shall be invalid unless performed in the manner pointed out." Our statute does not so provide. The general purpose of these statutes is to expedite and not to hamper the administration of justice—hence they are directory rather than mandatory. While courts should use meticulous care to follow the statute, a technical departure from the mode of procedure by the court in their enforcement, such as we have here, where the prisoner has not been shown to have been prejudiced thereby, will not constitute reversible error.

The defendant bases his objection to instructions one and two on the ground that in this case there was no evidence of malice—malice being an essential element of murder in either the first or second degree. While expressing no opinion on the weight of the evidence, we are of opinion that the case made by the state would warrant the giving of instructions complained of. We see no merit in the assignment of error to the court orally instructing the jury as to the different verdicts

they might find. It appears that after the written instructions were read to the jury, and after the jury had retired and were considering their verdict, they returned into court and requested the court to instruct them as to the number and kinds of verdicts they might find under the indictment and evidence in the case. The court was clearly within its rights in so instructing them. It did not violate § 22, chapter 131, Code, because such answers were not reduced to writing. We have so held. *State* v. *Skinner,* 101 W. Va. 632.  .

The last assignment of error relates to the separation of the jury. The separation and misconduct complained of was set out in three several affidavits, made by Lant R. Slaven and John B. Stratton, two practicing attorneys at the Mingo County bar, and Mike Abraham, a member of the trial jury. These affidavits were to the effect that during the trial of the case and while evidence was being taken, J. M. Berman, a merchant in the city of Williamson, came into the court room and called from the jury box one of the jurors, Irvin Berman; took him into a room back of the main court room, away from the sight and hearing of the defendant, the court, its officers and everyone else, closed the door and remained therein for five or ten minutes, after which the juror, Irvin Berman, returned into the court room and took his seat in the box. The merchant, J. M. Berman, immediately left the court room, and the taking of evidence was resumed.

The rule at common law required the jury to be kept together in both civil as well as criminal cases. It was much more rigid than now obtains in felony cases. The reason of the rule was two-fold. First, it tended to prevent intemperance on the part of the jury and accelerate the finding of the verdict. To this end, unless permitted by the court, they could not have meat, drink, fire, or candle, until they reached an agreement. Second, it prevented them from having any communication with any of the parties interested and from receiving any fresh evidence in private, and any violation of the rule in these latter respects vitiated the verdict. 3 Blk. Com. 376; 4 Blk. Com. 3361. This rule is modified by our statute (Ch. 159, § 6, Code), providing that: ''After a jury in

a case of felony is impaneled and sworn, they shall be kept together and furnished with suitable board and lodging by the sheriff or other officer until they agree upon a verdict or are discharged by the Court.'' It has been held that this inhibition does not apply to a jury while present in court. *State* v. *Poindexter,* 23 W. Va. 805. Here they are under the eye of the presiding judge. In other jurisdictions a separation of the jury without the consent of the prisoner is sufficient cause to set aside the verdict rendered against him. *Adams* v. *People,* 47 Ill. 376; *Caw* v. *People,* 3 Neb. 357; *State* v. *Prescott,* 7. N. H. 286; *State* v. *Parrant,* 16 Minn. 178; *State* v. *Brannon,* 45 Mo. 329; *State* v. *Camp,* 23 Vt. 551; *State* v. *Babcock,* 1 Conn. 401; *People* v. *Ranson,* 7 Wend. 423; *McCreary* v. *Commonwealth,* 29 Pa. 323; *People* v. *Symonds,* 22 Cal. 348; *Quinn* v. *State,* 14 Ind. 589. The following rule has been evolved from the decisions in this State and in Virginia. A mere separation of the jury will not entitle the person to a new trial; but where there has been an improper separation of the jury during the trial, if the verdict is against the prisoner, he is entitled to the benefit of the presumption, that such separation has been prejudicial to him, and the burden of proof is upon the prosecution to show beyond a reasonable doubt, that the prisoner has suffered no injury by reason of the separation. If the prosecution fails to do this, the verdict will be set aside. *State* v. *Robinson,* 20 W. Va. 721; *State* v. *Cartright,* 20 W. Va. 32; *State* v. *Harrison,* 36 W. Va. 729; *State* v. *Cotts,* 49 W. Va. 615; *State* v. *Clark,* 51 W. Va. 457; *State* v. *Cottrill,* 52 W. Va. 363; *Commonwealth* v. *McCaul,* 3 Va. 271; *Phillips* v. *Commonwealth,* 19 Gratt. 845.

The affidavits in this case disclose the very loosest practice in the management of the jury—a practice that is detrimental to the interests of justice and hazardous to the life and liberty of the citizens. It may be that the juror in question was not improperly influenced, but as we have seen that consideration does not satisfy the law. The facts here reveal an opportunity to improperly influence a juror. The burden is cast upon the State to rebut the presumption. It has made no attempt to do so. The record fails to disclose any reason

for its inaction.  This court will not disturb a verdict on account of such separation where the State has rebutted the presumption that such separation has been prejudicial to the prisoner by proof that nothing improper happened during such separation.  In showing this the court has gone to the extent of allowing jurors to testify, within certain limits. *State* v. *Cotts, supra.*  The act complained of here was of such character as clearly tended to excite suspicion and thus bring reproach upon the administration of justice.  A proper vigilance demanded in a trial of a case of this magnitude, on the part of the court and court officials, would have prevented this situation.  Charged by the law with the duty of explaining such misconduct, the State's representatives sat supinely by and made no effort to do so.  It is such uncalled for derelictions of duty on their part that is justly creating in the minds of the people a feeling of resentment over the law's delays.  Under the proper rule as ascertained from the position generally taken by the American Courts and the policy of the law, and so firmly established in this State as to not be overthrown or departed from, we are constrained, although reluctantly, to hold that the unexplained separation shown here is such as to demand a reversal of the case.

As the case must be sent back for a new trial, which of necessity will be before another jury, it becomes unnecessary to decide the question raised here by the challenge to the array of the panel.

*Judgment reversed; verdict set aside; new trial awarded.*