STATE OF WEST VIRGINIA *v.* ANDY HANNAH *et al.*

(No. 9115)

Submitted October 15, 1940. Decided December 14, 1940.

*Ned H. Ragland* and *C. R. Harless,* for plaintiffs in error.

*Clarence W. Meadows,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for defendant in error.

KENNA, JUDGE:

The effect of this writ of error was restricted to the sole question of whether there had been an improper separation of the jurors impanelled for the purpose of hearing the testimony and returning a verdict based upon a felony indictment against the defendants, Andy Hannah, Sherman Hannah, Vernon Thompson and Hazel Thompson.

The felony indictment against the defendants was returned in the Criminal Court of Raleigh County at the 1938, October term. A jury was impanelled and their trial was begun on January 3, 1939, the verdict of guilty as to all defendants being returned on January 6th. In considering the motion to set the verdict aside, the trial court investigated exhaustively the question of whether the separation of the jurors involved any improper con-

duct on the part of the jury as a whole or of any individual member thereof, and after having done so and considering other grounds upon which the motion rested, declined to set the verdict aside. Thereafter, an application for a writ of error was refused by the Circuit Court of Raleigh County and this Court granted a review of the two judgments.

There is no conflict in the testimony given in the post-verdict investigation. Eleven members of the jury were examined under oath as were the three deputy sheriffs who had charge of the jurors during the recesses while the trial lasted.

On one occasion all twelve members of the jury attended a moving picture, their seats having been reserved. Nine of them sat together on the ground floor and three sat in the balcony upon adjoining seats. Both groups were attended by a deputy sheriff, and nothing occurred indicative of an improper approach.

One juror, who was the general manager of the Raleigh Steam Laundry in the City of Beckley, was separated twice from the other members of the jury. Each time he was attended by a deputy sheriff during the entire period. On the occasion of his first separation, the juror went to his place of business, affixed his signature to a number of checks and discussed deliveries with his route foreman. He then went to his home, bathed and shaved and thereafter went to the home of another juror, going back to the courthouse after the lapse of approximately three hours. The second separation occupied about the same length of time which was spent in the same manner.

Another member of the jury went to his room in Beckley to change his clothes, accompanied by a deputy sheriff. He also went to a barber shop and to a restaurant for the purpose of drinking a bottle of beer.

Otherwise the jurors remained together.

The three deputy sheriffs who had charge of the jury on the occasion when they went to the picture show and also had charge of the two jurors who went to their homes

and one to his place of business testified that they knew of no improper conduct on the part of any member of the jury, nor any communication concerning the pending case having been attempted by a member of the jury nor by any other person.

Although it is well settled that the separation of a juror from other members of the panel in a felony case constitutes an irregularity that should be avoided if possible, that fact alone does not constitute a valid reason for setting aside the jury's verdict. It does, however, create a rebuttable presumption, and it devolves upon the State to introduce proof beyond a reasonable doubt that the separation has resulted in no improper conduct and particularly in no improper communication. *State* v. *Cartright*, 20 W. Va. 32, *State* v. *Robinson*, 20 W. Va. 713, 43 Am. Rep. 799; *State* v. *Cotts*, 49 W. Va. 615, 39 S. E. 605, 55 L. R. A. 176; *State* v. *Clark*, 51 W. Va. 457, 41 S. E. 204; *State* v. *Muncey*, 102 W. Va. 462, 135 S. E. 594. With four defendants before the court, this trial was a rather lengthy procedure conducive to a slight degree of leniency toward jurors required to forego their accustomed occupation.

We have carefully scrutinized the testimony concerning the only question that is being reviewed, and while it may have been physically possible under the showing made by the State to have improperly communicated with the juror who was not put on the stand, are of the opinion that the State adduced convincing proof to overcome the presumption which arose.

*Affirmed.*