# CHARLESTON

## STATE v. STEWART.

Submitted February 11, 1908.    Decided February 18, 1908.

1. CRIMINAL LAW—*Appeal—Conflicting Evidence.*

    In the trial of a felony case, where the verdict is supported by the evidence although very conflicting, and the trial judge has refused to set aside the verdict as contrary to the evidence; the appellate court will not disturb the verdict, unless it clearly appears from the record that injustice has been done the defendant. (p. 598.)

2. SAME—*Trial—Separation of Witnesses.*

    It is well settled in this state that when an order is made separating the witnesses at the trial of a case, if a witness in violation of the order remains in, or returns to the court room, and hears the testimony of the other witnesses he is not thereby rendered incompetent as a witness.    (p. 599.)

Error to Circuit Court, Raleigh County.

John Stewart was convicted of murder, and he brings error.

*Affirmed.*

E. O. PHLEGAR, JOHN W. BALL, and FILE & FILE, for plaintiff in error.

CLARKE W. MAY, Attorney General, for the State.

McWHORTER, JUDGE:

John Stewart, who was convicted of murder in the second degree in the criminal court of Raleigh county for the murder of Kyle Jennings in said county, applied to the circuit court of Raleigh county for a writ of error which was refused. He then obtained from one of the judges of this Court a writ of error, assigning several errors, the first of which is the refusal of the court to set aside the verdict of the jury, the same being clearly contrary to the evidence. A careful examination of the evidence shows that it is very conflicting and is such that the jury might have been justifiable in rendering the verdict they did, or a verdict for manslaughter, or possibly of acquittal. Counsel for plaintiff in error cite *State* v. *Sullivan*, 55 W. Va. 597 and *Robertson* v. *Harmon*, 47 W. Va. 501. In the former case it is held in point 2 of the syllabus: "If a new trial depends upon the weight of testimony, or the inferences from it, the jury are exclusively and almost uncontrollably the judges." And in point 3 it is held: "Where some evidence has been given to sustain a verdict a new trial will not be granted merely because the case is somewhat doubtful, or the judge, if a juror, would have found a different verdict. The evidence must be plainly, manifestly insufficient, and the verdict work injustice. This applies *a fortiori* to an appellate court." It will be observed here that the evidence must be plainly, manifestly insufficient and the verdict work injustice. Taking the evidence in case at bar as it appears in the record, it cannot be said that it is plainly, manifestly insufficient to support the verdict. It is true much of it is of a very dubious character, but the jury had the witnesses before them when testifying and were better able to judge of the truth or falsity of their testimony than we who have to form our opinions from the testimony in cold type. In the case of *Robertson* v. *Harmon, supra*, it is held: "Though evidence be conflicting, the court may set aside the verdict if against the weight of evidence, but such power should be exercised cautiously. When the court does so, its action is regarded with peculiar respect in an appellate court, and will not be reversed unless plainly wrong." We have here the refusal of the trial judge, who also had the advantage of the presence

of the various witnesses who testified in the case, to set aside the verdict.    Where the evidence is so strong in support of the verdict, as in case at bar, we do not see how this Court can set aside the verdict without infringing upon the province of the jury.

The second assignment of error is in permitting Will Jennings to testify and refusing to exclude his testimony, the witnesses having been separated and he having remained in the court house during the trial.    In the case of *Gregg v. State*, 3 W. Va. 705, it was held:  "That where a witness has been sworn and sent out, and by accident or design comes into the court room during the progress of the trial, he is not, for that reason, to be excluded, but it is matter going to his credit with the jury, of which they should be the sole· judges, under the circumstances."    In Archbold's Cr. Prac. and Pl., vol 1, p. 167, it is said.    "If the witness does not withdraw. when ordered, or afterwards returns into court before he is called for, and is present during the examination of some other witness, it is discretionary with the judge whether he will allow him to be examined or not."    *Hey v. Commonwealth*, 32 Grat. 946, 34 Am. Rep. 799; *Beaman v. Ellice*, 19 Eng. Com. Law Rep. 537.    In· the case of *Gregg v. State*, *supra*, the Court discusses this question at length and, speaking through Judge Maxwell. who delivered the opinion, says:  "No case has been cited, nor have I been able to find one in either England or this country, in which a witness for or against a prisoner has been excluded because he was in the court house and heard the other witnesses, in violation of an order sending the witnesses out."    See also *State v. Morgan*, 35 W. Va. 260.    We conclude that it is well settled in this State that when an order is made separating the witnesses at the trial of a case, if a witness in violation of such order remains in, or returns to the court room, and hears the testimony of other witnesses in the case, he is not thereby rendered incompetent as a witness.

The third assignment of error is the giving of instruction No. 1 on behalf of the State which is as follows:  "The court instructs the jury that where a homicide is proven, the presumption is that it is murder in the second degree, and the burden is on the state of showing that it is murder in the

first degree, and upon the accused of showing that it was without malice, and is therefore only manslaughter, or that he acted lawfully and is therefore not guilty, and in arriving at a verdict in this case the jury should take into consideration all the evidence and circumstances in the case, that was given both for the state and the defendant." This instruction is the same in substance as that given in *Hill's Case*, 2 Grat. 595, and is approved in *State* v. *Cain*, 20 W. Va. 679 and also in *State* v. *Hobbs*, 37 W. Va. 812. The instruction in case at bar is more favorable to the defendant than that given in the cases mentioned, in that it directs the jury that "in arriving at a verdict in this case the jury should take into consideration all the evidence and circumstances in the case, that was given both for the state and the defendant;" thus qualifying the preceding statement that the burden was upon the accused to reduce it below murder in the second degree by his own evidence as they were directed to take into consideration all the evidence in the case whether offered by the state or the accused.

Plaintiff in error complains of instruction No. 3, which is as follows: "The court further instructs the jury that a man is presumed to intend that which he does, or which is the immediate or necessary consequence of his act, and if the prisoner with a deadly weapon in his possession, without any, or very slight provocation, and mere words and threats however insulting are not such provocations, gives to another a mortal wound, the prisoner is *prima facie* guilty of willful, deliberate and premeditated killing, and the necessity rests upon him to show extenuating circumstances, and unless he proves such extenuating circumstances, or the circumstances appear from the case made by the state, he is guilty of murder in the first degree and the jury should so find;" and in support of his contention that the giving of such instruction was error, cites the cases of *State* v. *Cain*, *supra*, and *State* v. *Hertzog*, 55 W. Va. 74. A careful reading of the instruction in the *Cain* case and the one given in the *Hertzog* case will disclose quite a difference. In the latter case the jury are told that "the necessity rests upon Grant G. Hertzog of showing extenuating circumstances, as they appear from the case made by the state, Grant G. Hertzog is guilty of murder in the first degree." This part of the in-

struction was misleading to the jury. It could readily be construed as their being told by the court that as the circumstances appeared from the case made by the state the defendant was guilty of murder in the first degree. The only way in which the instruction here complained of differs from that given in the *Cain case* is the parenthetical words " and mere words and threats however insulting are not such provocations." The insertion of these words does not render the instruction erroneous because it is well settled that mere words and threats, however insulting, are not sufficient to provoke an assault.

The instruction No. 4 as follows: " The court futher instructs the jury that if they find from the evidence that the defendant shot and killed the deceased and that he relies upon self defense to excuse him for such act, the burden of showing such excuse is on the prisoner, and to avail him of such defense must be proven by a preponderance of the evidence from all the facts and circumstances in the case;" is complained of as being misleading in that it says, ".and to avail him of such defense must be proven" &c., without telling the jury what must be proven. A jury of ordinary intelligence could not fail to understand what was meant by the words of the instruction, *i. e.*, that such excuse or defense must be proven.

Plaintiff in error complains that the court refused the following instructions offered on behalf of the plaintiff in error, marked respectively "A" and "B": " The court further instructs the jury that in determining as to who was the aggressor at the time of the shooting the jury may consider the good character of the prisoner for peace and quietude and the bad character of the deceased for peace and quietude." " The court further instructs the jury that in determining the guilt or innocence of the prisoner they may take into consideration the good character of the prisoner for peace and quietude, and the bad character of the deceased for peace and quietude, because the law does not presume that a man of good character for peace and quietude will with a single bound fall from that of a peaceable and quiet citizen to that of a murderer."

Instructions "A" and "B" assume that the defendant had proved a good character for peace and quietude and had

also proved the bad character for peace and quietude of the deceased. There was evidence tending to prove the good character of the defendant and also evidence tending to prove the bad character of the deceased, but as to whether these facts were proven was a question for the jury. This assignment of error however is not insisted on in brief of counsel, neither is that set out in the petition for writ of error whereby the attention of the court is called to the fact that four of the jurors who tried the case signed a paper to the effect that they were willing and would have found the prisoner guilty of a less offense than that of murder in the second degree but that they were led to believe that they could not find the prisoner guilty of a less crime. Counsel did not insist upon this, evidently because it is too well settled that jurors will not be heard to impeach their own verdict.

There is no reversible error and the judgment of the criminal court will be affirmed.

*Affirmed.*