<hr/>

DETROIT, M. & T. S. L. RY. v. KIMBALL.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1914.)

No. 2394.

1. APPEAL AND ERROR (§ 1005*)—JURISDICTION OF FEDERAL COURTS—CITIZENSHIP OF PLAINTIFF—DETERMINATION.

Where a federal court submitted to a special jury the question of the citizenship of a plaintiff as bearing on the question of jurisdiction, and impliedly approved its finding by overruling a motion to dismiss for want of jurisdiction, an appellate court cannot reverse the judgment on that ground, unless clearly satisfied that the finding was wrong; and, where

<hr/>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the facts shown might have supported a finding either way, the place of legal residence is largely a question of plaintiff's actual intent.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3876, 3948–3950; Dec. Dig. § 1005.*]

2. JURY (§ 136*).—PEREMPTORY CHALLENGES—FEDERAL COURTS.

The provision of Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1166 [U. S. Comp. St. Supp. 1911, p. 241]) § 287, that "in all other cases (except those of felony) civil and criminal each party shall be entitled to three peremptory challenges" fixes definitely the number of such challenges allowable in a federal court, and excludes the operation of a state statute on the subject.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 607–618; Dec. Dig. § 136.*]

3. JURY (§ 126*)—CHALLENGE FOR CAUSE—DISCRETION OF COURT.

Where a juror was at first excused on a peremptory challenge, but before he left the room was recalled and the challenge overruled, it was within the discretion of the court to overrule a challenge for cause, based on the prejudice which would be caused in the juror's mind by the peremptory challenge.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 555; Dec. Dig. § 126.*]

4. EVIDENCE (§ 545*)—COMPETENCY—OPINION OF PHYSICIAN.

The testimony of a physician *held* to show a sufficient basis for the admission of his opinion as an expert as to the extent of an injury received by a plaintiff.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2360–2362; Dec. Dig. § 545.*]

5. DAMAGES (§ 173*)—PERSONAL INJURY—EVIDENCE.

On the question of damages from loss of earning capacity caused by an injury to a plaintiff, who was engaged in a gainful occupation, evidence of actual absence from business, of time spent in a hospital, and lost through other illness caused by the injury, is proper to be considered.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 490–492, 501; Dec. Dig. § 173.*]

In Error to the District Court of the United States for the Western Division of the Northern District of Ohio; John W. Killits, Judge.

Action at law by Bertha G. Kimball against the Detroit, Monroe & Toledo Short Line Railway. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 189 Fed. 409.

Mrs. Kimball, who was the plaintiff below, alleged serious physical injury suffered in a collision while she was a passenger on a railroad of the plaintiff in error, a Michigan corporation. Claiming residence and citizenship in Ohio, Mrs. Kimball brought this action in the United States District Court, at Toledo, and eventually recovered the judgment to reverse which this writ of error is brought.

One of the defenses set up in the answer was that Mrs. Kimball was, in truth, a citizen of Michigan, and not of Ohio, and hence the jurisdiction of the court was denied. The District Court held a preliminary inquiry on this subject, and submitted the issue to a jury, which found that she was a citizen of Ohio. It is not entirely clear whether this verdict was treated as controlling or as advisory merely, but, upon motion that the case be dismissed for lack of jurisdiction notwithstanding the verdict of the jury, the District Judge filed an opinion indicating that he thought the verdict was right under the testimony, and he denied the motion. A special bill of exceptions,

showing the proceedings on this trial of the question of citizenship, was set-
tled and preserved. At a later term, the case came on for trial on the merits.
This trial was mainly directed to the question of damages, since the facts of
the collision and Mrs. Kimball's status as a passenger were not in dispute.
However, she was cross-examined at length as to her citizenship, and on that
subject a showing was made which was not identical with that which developed
on the preliminary trial.

The errors alleged are: (1) In instructions to the jury on the citizenship
trial, and in not dismissing the case, on the final hearing, for lack of jurisdic-
tion; (2) in overruling a challenge to a juror; (3) in rulings admitting and
excluding testimony; (4) in refusing defendant's requests for special charges,
and in the charge as given.

King, Tracy, Chapman & Welles, of Toledo, Ohio, for plaintiff in
error.

G. B. Keppel, of Toledo, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit
Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] 1.
The criticism as to instructing the jury on the preliminary trial is that
the court said Mrs. Kimball's testimony, referring to her intention to
keep her "home" in Toledo, might properly be considered as intended
to refer to her citizenship status. This was clearly not beyond the
proper function of the trial judge in assisting the jury.

As to the merits of the citizenship question, the assignments of er-
ror present only the proposition that it was the imperative duty of
the court to dismiss the case for lack of jurisdiction. Upon the final
trial, this issue was not submitted to the jury, nor was any request
made for such submission. The record, therefore, contains a finding
by a jury, and (if the question was really in the end one for the court)
implies a finding by the court that Mrs. Kimball was a citizen of Ohio.
In this state of the record, the judgment cannot be overturned on this
ground, unless we are clearly satisfied that the finding is wrong. See
Note 1.[1] The evidence here does not require that conclusion. Mrs.
Kimball had, for some years before the accident, maintained a sum-
mer boarding house at Mt. Clemens, Mich., and each season had closed
up the house and spent part of the year in Cleveland, generally with
her mother. She testified that, after the accident and before suit
brought, she had determined to give up the Mt. Clemens enterprise
and to make her permanent home in Cleveland, made efforts to get
rid of the lease of her Mt. Clemens house and to sell her furniture,
and had gone to Cleveland to stay, and insisted that, although she had
been unable to dispose of her Mt. Clemens property and had contin-
ued the business there about as before, she had never given up her in-
tention to reside permanently in Ohio. The proof of acts evidencing
her intention to make her real home in Ohio is inconclusive; the in-
ference that her home was in Michigan, rather than in Ohio, both be-

[1] Note 1.—For a discussion of the burden of proof on such questions, see
opinions of Judges Hook and Amidon in Hill v. Walker, 167 Fed. 241, 92 C.
C. A. 633. The principal case does not present the problem of a finding of
diverse citizenship which is against the clear weight of the evidence.

fore and after the accident, would be as natural from all her acts as any other inference would be; but where a person is, during a series of years, habitually living in two different states for parts of each year, the location of the legal residence is determined largely by the actual intent, and in the face of her testimony as to this intent, we cannot say that the findings of the court and jury are clearly wrong.

[2] 2. In the course of selecting the jury, and after defendant had exercised three peremptory challenges, defendant interposed a fourth similar challenge. This was, at first, sustained by the trial judge, following the Ohio state practice and a special rule of the Circuit Court (apparently tacitly continued in the District Court after January 1, 1912) adopting that practice; but immediately, and before the juror had left the room, the judge recalled this ruling and seated the juror. This was because the judge thought that section 287 of the Judicial Code operated to abrogate the local rule, and forbade more than three challenges of this class. In this we think the District Judge was clearly right. This section says that "in all other cases, civil and criminal, each party shall .be entitled to three peremptory challenges." Counsel argue, that the word "entitled" is a word of grant and not a word of limitation; that it fixes the minimum and not the maximum. We cannot agree with this construction. We think this section, which, without change in this respect, has been in force since 1872 (R. S. § 819 [U. S. Comp. St. 1901, p. 629]), is intended not merely to give a minimum or to limit the maximum number of challenges, but finally to fix that number; and, Congress having spoken, the jury conformity statute (R. S. § 800) had no further force (if, indeed, it ever applied to the selection of jurors on the trial).

[3] It was not error thereafter to overrule the challenge against this same juror based on the prejudice which would arise in his mind because he had been peremptorily challenged. Whether such an occurrence would seriously affect the man's impartiality must be determined in each instance by the trial judge. His ruling here was fairly within his discretion. Nor can we think that, by his momentary discharge, the juror had become a mere bystander, incapable of recall into the box.

[4] 3. A physician, an expert witness for plaintiff, was permitted to state his opinion that she had "an affection of the spine at the eleventh dorsal vertebra—either a congestion or exudation in the spinal column." This was objected to and sought to be stricken out for the reason that it was not based either upon a hypothetical question or on any sufficient knowledge, study, or examination by the witness. The objection rested on the doctor's admission that there were no "objective symptoms" which particularly tended to support his diagnosis. He had testified, however, that, in making this diagnosis, he had examined the spinal column, going over the vertebræ one after another, and that he had given her electric treatment along the spine, and had applied that treatment repeatedly and especially to this particular vertebra, that the electrical treatment brought no reaction, but that pressure caused a "flinching" that he was sure was involuntary. There is apparent confusion in the record between witness and examiner, in

the use of the phrase "objective symptoms," and it is not clear that when the doctor disclaimed "objective symptoms," he meant that his physical and electrical examination and treatment at this point did not disclose local conditions justifying his conclusions. For all the record shows, and for all we can judicially know, the lack of reaction to an electrical shock and the sensitiveness to pressure at that point may have sufficiently indicated some "exudation or congestion." However erroneous it may appear to an expert, the doctor's entire testimony tends, at least, to support his inference. There was no error in receiving this statement.

The court permitted plaintiff to testify that, for several years before the accident, her average earnings or net profits in the boarding house business at Mt. Clemens had been from $800 to $900 a year. Objections were based on the ground that such profits were speculative, and that they were not shown to be different after the accident, while the true measure of damages was her loss of earning capacity. Whatever the admissibility of this testimony, the court charged:

"One of the items of damage claimed here is in reference to the loss suffered by the plaintiff in her business as a hotel or boarding house keeper. You will disregard any claims asserted by her in that connection."

And further:

"She would be entitled to compensation for the loss of earning capacity, if any, occasioned by reason of this injury, not taking into consideration these boarding house profits."

This charge cured the error, if any, in admitting testimony. If it was thought, as is now urged, that the general permission to give damages for "loss of earning capacity," although the common and ordinary measure of damages, was inappropriate in this case, special limiting instructions should have been asked.

The remaining assignments of error relating to receiving and rejecting evidence, we think do not merit detailed discussion. If the objections involved were well taken, we are satisfied that they involve nothing seriously prejudicial.

[5] 4. The court was asked to charge that there was no evidence that plaintiff had suffered any loss of earning capacity. The court, on the contrary, left this question, generally, to the jury, as above stated. The request was based on the theory that the loss of boarding house profits could not be considered, and that there was nothing else. There was, however, proof of actual absence from business, of time spent in a hospital, and of other illness and of physical and mental suffering. These things, suffered by one engaged in a gainful occupation, naturally imply a general loss of earning capacity. Some limitations of this general and naturally implied right to recover for such loss might have been proper to this case, but they were not asked.

The judgment is affirmed, with costs.