STATE OF WEST VIRGINIA

*v.*

JOHN JOSEPH CARDUFF

(No. 10766)

Submitted April 24, 1956.        Decided June 26, 1956.

*Clifford, Jones & White,* for plaintiff in error.

*John G. Fox,* Attorney General, *Charles R. McElwee,* Assistant Attorney General, for defendant in error.

HAYMOND, JUDGE:

At the November Term, 1953, of the Criminal Court of Harrison County, the defendant John Joseph Carduff was indicted for a misdemeanor by the grand jury of the county attending that court. The indictment charged the defendant with the unlawful sale of a designated quantity of whisky in that county, in October 1953, to H. E. Parks, without a state license and without authorization under the Liquor Control Act to make such sale. The defendant filed a plea in abatement by which he challenged the validity of the indictment on the ground that the grand jury which returned it was not legally constituted and for that reason the indictment was void. A demurrer to the plea in abatement was sustained and the defendant filed a plea of not guilty.

Upon the trial the jury, on December 8, 1953, returned a verdict of guilty as charged against the defendant. On May 6, 1954, the court overruled the motion of the defendant to set aside the verdict and grant him a new trial and by final judgment sentenced the defendant to confinement in the county jail for a period of one year and to pay a fine of five hundred dollars and costs.

By order entered March 9, 1955, the Circuit Court of Harrison County refused to grant the defendant a writ of error to the final judgment of the criminal court; and to that judgment of the circuit court this Court awarded

this writ of error on September 12, 1955, upon the application of the defendant.

The evidence upon which the State relied to convict the defendant consisted of the testimony of troopers Parks and Smithers, members of the West Virginia Department of Public Safety, who were the only witnesses produced in its behalf in the introduction of its evidence in chief upon the trial of the indictment. Parks stationed at Kingwood, Preston County, and Smithers stationed at Point Pleasant, Mason County, were ordered to report to the headquarters of Company A of the department at Shinnston, Harrison County, on October 28, 1953, where they were directed, as police officers in plain clothes, to conduct an investigation of suspected violations of the liquor control and gambling laws of this State in Harrison County. They proceeded by automobile from Shinnston to Clarksburg and ate dinner at a restaurant in that city about six o'clock that evening. After leaving the restaurant, and between approximately six thirty and eight o'clock, they visited six different places in various parts of the city at each of which, during their presence of several minutes, Parks purchased and paid for two one ounce drinks of whisky, to which were added ice and a nonintoxicating beverage, one of which he drank and the other of which Smithers drank at each of the six places.

After leaving the last of the six places Parks and Smithers went to a place in West Clarksburg, at Number 752 West Pike Street, known as the Boots and Saddle Club which consisted of a restaurant and a bar in a room at the rear of the restaurant. They arrived there about eight thirty o'clock, entered the club through the restaurant, and while they were there for about fifteen minutes Parks met the defendant, had some conversation with him, and purchased from him two drinks of whisky. Parks paid the defendant fifty cents for each drink and Parks and Smithers each consumed one of the two drinks. During and after their visits to the first six places Parks and Smithers stopped at rest rooms and to rid themselves

of the whisky they had drunk Parks vomited twice and Smithers vomited once. Each testified that though he felt the effect of the whisky he was sober and in full control of his mental and physical faculties. After the officers left the Boots and Saddle Club they did not visit it again that night and the defendant was not arrested until November 4, 1953, at which time Parks again visited the premises.

The defendant, who testified in his own behalf, denied that he owned or operated the Boots and Saddle Club on October 28, 1953. He admitted that he worked there before and until the first or second week in August, 1953; that the place was closed about that time after he had been informed by the prosecuting attorney that he "was violating the law"; that it remained closed until about the first of October; and that he was operating a restaurant and a pool room in a room which adjoined the club on October 28, 1953. He stated that he rented the premises occupied by the club to a man named Douglas on September 3, 1953; that Douglas was still his tenant at the time of the trial; that while the club was in operation there was only one employee, a waitress named Margaret Watkins, who was in charge of the bar and served its customers; and that though he was "in and out" of the club daily, he did not assist the waitress in her work at the bar or have any supervision or control of the club after the first or second week in August, 1953. He denied that he sold whisky to Parks or Smithers on October 28, 1953, or at any other time, or that he had ever seen Parks before November 4, 1953, when the defendant was arrested, or that he had ever seen Smithers until he saw him in the courtroom a few days before the trial.

On cross-examination the defendant was asked if on the night of November 4, 1953, when coming out of the doorway of the Boots and Saddle Club with four bottles of whisky in his possession, he was arrested by Chief Deputy Matt Minard, and if, at that time, Minard asked him who was in charge of the Boots and Saddle Club, and if

he told Minard that he was in charge of the club. The defendant admitted his arrest at the restaurant with four bottles of whisky in his possession by Minard at that time but denied that he was arrested in the club or when coming out of its doorway; and he also denied that he then had any conversation with Minard or told him that he was in charge of the club.

Margaret Watkins, the waitress employed at the Boots and Saddle Club, in October 1953, a witness in behalf of the defendant, testified that she was on duty there from the early evening of October 28 until the morning of October 29, 1953; that during that time neither she nor the defendant sold or served any drinks of whisky to Parks or Smithers; and that neither Parks nor Smithers was at the club at that time. Another witness in behalf of the defendant, Betty Crane, who during October, 1953, was employed by the defendant as manager of his restaurant, testified that she was on duty there from seven o'clock in the evening of October 28, 1953, until the restaurant closed after midnight; that neither Parks nor Smithers was in the restaurant that night; and that she had never seen either of them until November 4 of that year.

In rebuttal, to contradict the statements of the defendant concerning his arrest by and his imputed conversation with Minard, the State introduced, over the objection of the defendant, the testimony of Minard that on November 4, 1953, he arrested the defendant when he was coming out of the doorway of the club; that he asked the defendant if he was in charge of the club; and that the defendant said "yes." The defendant excepted to the ruling of the court in admitting this testimony and made a motion that the court declare a mistrial, which motion was overruled.

By his plea in abatement the defendant asserts the invalidity of the indictment on the ground that it was not found by a legally constituted grand jury. In substance the plea alleges that the jury commissioners of the criminal court did not, at the levy term of the county court

of Harrison County in 1952, or at any other time required by the criminal court, or the judge of that court, in vacation, prepare a list of not less than one hundred or more than two hundred qualified persons for grand jury service; that the jury commissioners did, on November 5, 1952, seventy eight days after the adjournment of the levy term of the county court in that year, prepare, without warrant or authority of law, a list of two hundred and nineteen persons of the county for grand jury service, delivered such list to the clerk of the criminal court, and placed the names of the persons appearing on it in a grand jury box in the custody of such clerk; that on October 6, 1953, Lynch and Royal, the jury commissioners of the criminal court, Royal having succeeded a former jury commissioner on May 31, 1953, met with the clerk of the criminal court and drew from the jury box the names of sixteen persons placed in the box on November 5, 1952; that those persons were then summoned to appear as grand jurors on November 10, 1953, the first day of the regular November 1953 term of that court; that fourteen of those persons and two other persons, selected by special jury commissioners, were sworn and acted as the grand jury at the November 1953 term of the court and were the same persons and the same grand jury that found and returned the indictment against the defendant; and that the grand jurors who found and returned the indictment against the defendant were not drawn or selected from any lawful, proper or authorized list of names prepared by the jury commissioners of the criminal court of Harrison County, West Virginia, for grand jury service. The plea in abatement does not allege any defect or irregularity in the selection of the grand jury, or that any of the persons whose names were on the list were not qualified to serve as grand jurors, other than the failure of the jury commissioners to prepare a list of not less than one hundred or more than two hundred persons qualified for grand jury service during the levy term of the county court in 1952, and their action in preparing a list of two hundred and nineteen persons seventy eight

days after the adjournment of that term of the county court in that year.

The panel of twenty prospective jurors from which the jury at the trial of the defendant was selected included eight persons who had served as jurors at the earlier trials at the same term of court of two defendants who were indicted for and found guilty of the separate offenses of the unlawful sale of intoxicating liquor to Parks during the investigation conducted by him and Smithers. At each of those trials Parks and Smithers testified, as witnesses in behalf of the State, that the defendant made the unlawful sale charged against him in the indictment. The panel also included four prospective jurors who had been present in court during one or both of those trials. The defendant challenged for cause each of those members of the panel and by motion urged the court to exclude each of them from the panel. After the court had examined in detail the members of the panel upon their voir dire and after each member, by his silence, had indicated that he had not formed an opinion concerning the guilt or the innocence of the defendant and that each member could render a fair and impartial verdict upon the evidence, the court denied the motion of the defendant to exclude from the panel the persons so challenged by him. The trial jury, as finally selected, was composed of nine of the twelve challenged, and three of the unchallenged, members of the panel.

The defendant assigns numerous errors which, as summarized, consist of the action of the trial court: (1) In sustaining the demurrer to the plea in abatement; (2) in refusing to exclude from the panel of twenty the jurors challenged for cause by the defendant; (3) in admitting over objection of the defendant certain evidence offered by the State; (4) in excluding certain evidence offered by the defendant which was objected to by the State; (5) in giving over objection of the defendant Instructions Numbers 1 and 2 offered by the State; (6) in refusing to give Defendant's Instructions Numbers 1, 2, 9, 11, 21 and

22 and in refusing to give Defendant's Instructions Numbers 3, 13 and 16 without modification; (7) in refusing to direct the jury to return a verdict for the defendant; and (8) in denying the motion of the defendant to set aside the verdict because it is contrary to the law and the evidence and is not supported by the evidence.

Section 2, Article 2, Chapter 52, Code, 1931, to the extent here pertinent, provides that the jury commissioners shall select and draw persons for grand juries and "shall, at the levy term of the county court each year, and at any other time when required by the court which appointed them, or the judge thereof in vacation, prepare a list of not less than one hundred nor more than two hundred qualified persons of their county, for grand jury service, chosen from the respective magisterial districts thereof, as nearly as may be in proportion to the population of the districts. The lists so prepared shall be submitted to the clerk of the court authorized to impanel a grand jury, or the judge thereof when required, and the name of any person who is not qualified shall be stricken from the list by the clerk or judge. The persons so listed shall be men of good moral character, who have never been convicted of a felony or of any scandalous offense; and shall have been bona fide citizens of the State and county for at least one year immediately preceding the preparation of the list, and shall not be office holders under the laws of the United States or of this State. At the time such jury list is made up, the jury commissioners shall cause all the names thereon to be written, each on a separate ballot, and shall fold, roll or prepare the same so as to resemble each other as nearly as may be, and so that the name written thereon shall not be visible on the outside, and shall inclose the ballots for each magisterial district in a separate envelope indorsed with the name of the magisterial district and the number of ballots inclosed, and shall deposit all the ballots, with the list, in a secure box to be prepared for the purpose, which shall be delivered to and safely kept by the clerk of the circuit court, and shall be known as the 'grand jury box'

and shall be opened only by the jury commissioners or by order of the judge of the court having control thereof."

Section 3 of the same article and chapter also provides that "The clerk of any court requiring a grand jury shall, at least thirty days before the term of court, summon the jury commissioners to attend at his office at a day specified, which shall not be less than twenty days before such term, and select men for the grand jury, but the court, or judge thereof, may require such jury commissioners to appear forthwith, or at any specified time, and select grand jurors for either a regular, special or adjourned term of court. On the day appointed, the jury commissioners shall appear and draw the names of sixteen persons from the grand jury box, and the persons so drawn shall constitute the grand jury. If when drawing the ballots it shall appear to the commissioners that any person so drawn is dead, or for any reason disqualified or unable to serve, they shall destroy the ballot and cancel the name on the list and draw another in his stead. They shall enter the names of all persons so drawn in a book kept for that purpose and deliver a list thereof to the clerk, who shall issue a summons for the persons drawn, directed to the sheriff of the county requiring him to summon them to appear on the day required and serve as grand jurors. * * *."

As the only defect in the selection of the grand jury charged in the plea in abatement and relied on by the defendant to render the indictment void because not found and returned by a legally constituted grand jury is the failure of the jury commissioners to prepare a list of not less than one hundred or more than two hundred persons qualified for grand jury service instead of a list of two hundred and nineteen such persons, during the period and within the time prescribed by section 2 of the statute, it is necessary to determine whether the applicable provisions of that section are mandatory or directory in character. If those provisions are mandatory strict compliance is required and the failure of the jury com-

missioners to prepare the list of not less than one hundred or not more than two hundred qualified persons, instead of two hundred and nineteen qualified persons, during the levy term of the county court in 1952, would render the list invalid, the grand jury drawn from it illegally constituted, and the indictment void. If, however, the applicable provisions relating to the time for the preparation of the list and the number of qualified persons placed on it are merely directory, substantial compliance with their requirements, which results in no prejudice to the defendant, is sufficient and the list is valid, the grand jury drawn from it is properly constituted, and the indictment is not vitiated by the delay in the preparation of the list or by the excess in the number of qualified persons included in it.

It should be observed that the provisions of the quoted sections of the statute in specifying the acts to be performed and the procedure to be followed generally contain the word "shall" and that it appears twenty two times in the quoted provisions of those two sections.

In *State* v. *Howard,* 137 W. Va. 519, 73 S. E. 2d 18, this Court held to be mandatory a provision of Section 3, Article 1, Chapter 52, Code, 1931, that "There shall be two jury commissioners for every court of limited jurisdiction, who shall be appointed by such courts, or the judges thereof in vacation, respectively, * * *"; that a grand jury drawn by commissioners, one or both of whom were appointed by the clerk of the court was unlawfully constituted; and that an indictment returned by such grand jury was void. In that case, however, this Court also held that the provision of Section 3, Article 2, Chapter 52, Code, 1931, that the clerk of any court requiring a grand jury shall, at least thirty days before the term of court, summon the jury commissioners to attend at his office at a day specified, which shall not be less than twenty days before such term, and select men for the grand jury, was directory and in the opinion used this language: "In general it may be said that the provisions of Code, 52-2-3, as relate to the issuance of a *venire facias* for grand

jurors, are directory. Thus it has been held that the requirement of Code, 52-2-3, respecting the time of the issuance of a *venire facias* for grand jurors is directory, and even the failure to issue such writ will not vitiate an indictment, which is found by a grand jury, selected and drawn in the manner provided by statute, which actually was in attendance and was impanelled and sworn in accordance with the statute. *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68; *State* v. *Hoke,* 76 W. Va. 36, 84 S. E. 1054." See also *State* v. *Taylor,* 57 W. Va. 228, 50 S. E. 247.

In *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A, 1074, decided in 1914, cited and relied upon by the defendant, involving an earlier statute, Section 3, Chapter 157, Code, 1913, which provided that "At the time of issuing such venire the clerk shall issue a summons in the name of the State, requiring the clerk of the county court of the county to attend at the clerk's office of the circuit court of such county, on a day named in such summons, which shall not be less than twenty days before such term, for the purpose of drawing the ballots for the number of grand jurors mentioned in said writ. If the clerk of the circuit court be also clerk of the county court, the summons shall require a justice to attend for such purpose. The writ of venire facias and summons shall be served as provided in section nine of chapter one hundred and sixteen of this Code, and the said officer shall attend and cause the proper number of grand jurors to be drawn from the box, and a list thereof to be delivered as provided in said section.", this Court held that the provision, which required the presence of the clerk of the county court at the drawing of the grand jury and the delivery and the preservation by the clerk of the circuit court of the list of the persons selected to serve as grand jurors, was mandatory and that a failure to comply with all or any of those requirements rendered the grand jury illegal and its indictments void, but that the provision which related to the issuance of a venire facias for a grand jury was directory.

In *State* v. *Muncey,* 102 W. Va. 462, 135 S. E. 594, de-

cided in 1926, an order of the circuit court directed the clerk of that court to summon a special grand jury to draw and select from the grand jury list sixteen qualified grand jurors to attend the circuit court and pursuant to such order the clerk, in the presence of the judge, drew from the grand jury box the names of sixteen jurors. The statute then in force, Chapter 157, Barnes Annotated Code, 1923, provided that "The jury commissioners * * * shall select and draw persons for grand juries." and also authorized the court or the judge to "require said jury commissioners to appear forthwith, or at any specified time, and select grand jurors for either a regular or special term of court." This Court held that the grand jury so selected was properly constituted and in point 2 of the syllabus used this language: "The general purpose of the statutes relating to the drawing of grand juries is to expedite and not to hamper the administration of justice—hence they are directory rather than mandatory. While courts should use meticulous care to follow the statute, a technical departure from the mode of procedure by the court in such drawing, where the prisoner has not been shown to have been prejudiced thereby, will not be ground for reversal."

The opinion in that case also contains these statements: "It may reasonably be inferred that the jury commissioners were the proper ones to make the drawing here. But shall we quash the indictment? We have held frequently that the statutes providing the method of summoning grand juries are directory. *State* v. *Taylor,* 57 W. Va. 228; *State* v. *Hoke,* 76 W. Va. 36; *State* v. *Wetzel,* 75 W. Va. 7; *State* v. *Driver,* 88 W. Va. 480; *State* v. *Austin,* 93 W. Va. 704. This is on the theory that it is merely an accusing body, and the liberty of the citizens does not require that nice inquiry should be made into the manner in which it was organized. Thompson & Merriam on Juries, § 140; *State* v. *Austin, supra.* Its selection was protected from technical attacks thereon by the statute providing that 'no presentment or indictment shall be quashed or abated on account of the incom-

petency or disqualification of any one or more of the grand jurors who found the same.' Code, Ch. 157, § 12. There is no charge here that the jury was not properly selected by the jury commissioners and placed in the box, and that the box had not been kept in the manner provided by law. The act complained of was merely ministerial. It was performed under the direction of and in the presence of the court. How could the prisoner have been prejudiced? As Judge Brannon said in *Eastham v. Holt,* 43 W. Va. 603: 'A large discretion is here given the court for the administration of justice.' This court said in *State* v. *Price,* 92 W. Va. 542: 'Ordinarily, a statute providing simply a mode of procedure will be held to be directory, and if the thing intended is done in some other way than that provided by the statute it will be valid, unless the statute in express terms provides that it shall be invalid unless performed in the manner pointed out.' Our statute does not so provide. The general purpose of these statutes is to expedite and not to hamper the administration of justice—hence they are directory rather than mandatory."

In 9 Michie's Jurisprudence, Grand Jury, Section 19, the text contains this language: "In view of the fact that the finding of a grand jury is only an accusation at most, the courts are not ordinarily astute in discovering technical irregularities in the process of procuring this jury. * * *. The cases in West Virginia hold that mere irregularity in the manner of selecting a grand jury, when the objection does not go to the competency of jurors, cannot be taken advantage of even by a plea in abatement; nor can a mere irregularity in summoning." See *Eastham* v. *Holt,* 43 W. Va. 599, 27 S. E. 883, 31 S. E. 259; *State* v. *Martin,* 38 W. Va. 568, 18 S. E. 748; *Bradford* v. *The State,* 4 W. Va. 763; *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A, 1074. See also *State* v. *Burdette,* 135 W. Va. 312, 63 S. E. 2d 69; *State* v. *Driver,* 88 W. Va. 479, 107 S. E. 189, 15 A.L.R. 917; *State* v. *Henderson,* 29 W. Va. 147, 1 S. E. 225.

This Court has held in several cases that various pro-

visions of the statute then in force relating to grand juries which contained the word "shall" in connection with the act required to be performed or the procedure to be followed were directory and that substantial compliance with their requirements did not render the grand jury unlawful or vitiate an indictment returned by such grand jury. *State* v. *Howard,* 137 W. Va. 519, 73 S. E. 2d 18; *State* v. *Austin,* 93 W. Va. 704, 117 S. E. 607; *State* v. *Hoke,* 76 W. Va. 36, 84 S. E. 1054; *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A, 1074; *State* v. *Taylor,* 57 W. Va. 228, 50 S. E. 247; *State* v. *Clark,* 51 W. Va. 457, 41 S. E. 204.

In *State* v. *Medley,* 66 W. Va. 216, 66 S. E. 358, decided in 1909, a provision of Section 3, Chapter 116, Code, 1899, then in effect, relating to the selection of petit jurors, that the jury commissioners of each county shall, at the levy term of the county court annually, and at any other time when required by the circuit court of the county, prepare a list of such inhabitants of the county as they shall think well qualified to serve as jurors, was held to be directory and substantial compliance with its requirements was deemed to be sufficient. In the opinion this Court said: "Apparently, the only purpose of the act in designating the levy term of the court as the time at which the jury commissioners should meet to make up their list is to fix some definite annual period when it should be done. In respect to the time of meeting the statute is simply directory, and a substantial compliance therewith is sufficient. *State* v. *Clark,* 51 W. Va. 457; Thompson and Merriam on Juries, section 145 and section 47." In that case this Court also held that a writ of venire facias, by which fifty instead of thirty jurors, the number prescribed by statute unless a different number was required by an order of court, there being no such order, was a mere irregularity and that the defendant was not prejudiced by the action of the clerk in summoning more jurors than the number prescribed by the statute. In *May* v. *Commonwealth,* 294 Ky. 308, 171 S. W. 2d 465, the court held that the action of the jury com-

missioners in placing more than the maximum number of three hundred names provided by statute in the jury wheel from which the grand jury was drawn did not vitiate an indictment returned by such grand jury.

In *State* v. *Huff*, 80 W. Va. 468, 92 S. E. 681, involving the provision of Section 3, Chapter 116, Code, 1906, Annotated, relating to juries generally, that "The jury commissioners of each county shall, at the levy term of the county court thereof, annually, and at any other time when required by the circuit court of such county, * * * prepare a list of such inhabitants of the county, * * *, as they shall think well qualified to serve as jurors," this Court, in point 4 of the syllabus, used this language: "The statute requiring jury commissioners to prepare and to the clerk deliver for record in his office a list of the jurors selected by them is directory, and a reasonable delay in the performance of that duty is not such a material irregularity as will warrant a motion to quash a panel drawn from the list." The language of the syllabus indicates clearly that this Court considered and held that the provision of the statute designating the time of the preparation of the list was merely directory and that a substantial compliance with that requirement was sufficient. Though the language is also broad enough to suggest that the requirement that a list be prepared is also directory, it should not be given that effect in view of the qualifying statement that "a reasonable delay in the performance of that duty is not such a material irregularity as will warrant a motion to quash a panel drawn from the list," and for the reason that it is evident that the requirement that a list shall be prepared relates to a matter of substance and is essential to the validity of the particular act which the statute provides shall be done. Accordingly the foregoing syllabus is construed to mean that the requirement that a list of persons whom the jury commissioners deem qualified to serve as jurors be prepared is mandatory but that the requirement that such list be prepared at the levy term of the county court is merely directory.

Though generally the use of the word "shall" in constitutions and statutes limits or prevents the exercise of discretion, *Baer* v. *Gore,* 79 W. Va. 50, 90 S. E. 530, L.R.A. 1917B, 723, its use in such provisions is not conclusive in determining whether they are mandatory or directory. "The rule that the word 'shall' should be construed as mandatory has appropriate application when the provision of the statute relates to the essence of the thing to be done, or to matters of substance." *State ex rel. Boone County Coal Corporation* v. *Davis,* 133 W. Va. 540, 56 S. E. 2d 907. In determining whether a statute is mandatory or directory the intention of the Legislature is controlling, and if that intention is to make compliance with the statute essential to the validity of the act directed to be done, the statute is mandatory. *State ex rel. Thompson* v. *Fry,* 137 W. Va. 321, 71 S. E. 2d 449; *State* v. *Simmons,* 135 W. Va. 196, 64 S. E. 2d 503. If, however, the intention of the Legislature is not to make compliance with the statute essential to the validity of the act directed to be done or the procedure to be followed, the statute is merely directory. *State* v. *Simmons,* 135 W. Va. 196, 64 S. E. 2d 503; *Mears* v. *Dexter,* 86 Va. 828, 11 S. E. 538; 82 C.J.S., Statutes, Sections 374 and 376.

In 82 C.J.S., Statutes, Section 376, the text contains this language: "Whether a statute is mandatory or directory depends on whether the thing directed to be done is of the essence of the thing required, or is a mere matter of form, and what is a matter of essence can often be determined only by judicial construction. Accordingly, when a particular provision of a statute relates to some immaterial matter, as to which compliance with the statute is a matter of convenience rather than substance, or where the directions of a statute are given merely with a view to the proper, orderly, and prompt conduct of business, it is generally regarded as directory, unless followed by words of absolute prohibition; and a statute is regarded as directory where no substantial rights depend on it, no injury can result from ignoring it, and the purpose of the legislature can be accomplished in a manner

other than that prescribed, with substantially the same results." See also 24 Am. Jur., Grand Jury, Sections 6 and 19; 50 Am. Jur., Statutes, Section 25.

In enacting the provision that the jury commissioners "shall, at the levy term of the county court each year, and at any other time when required by the court which appointed them, or the judge thereof in vacation, prepare a list of not less than one hundred nor more than two hundred qualified persons of their county, for grand jury service," the Legislature intended that a list of qualified persons for grand jury service should be essential to the selection of a lawful grand jury and, as the preparation of such list is essential to accomplish the legislative purpose, the provision requiring its preparation is mandatory. It is manifest, however, that the designated time for the preparation of the list is not essential to its validity and is fixed by the statute as a matter of convenience rather than substance, and that such provision is not mandatory but is merely directory in character. In consequence, the failure of the jury commissioners to prepare the list of persons qualified for grand jury service during the levy term of the county court in 1952, their action in placing on the list the names of two hundred and nineteen persons instead of the maximum number of two hundred persons specified in the statute, and the delay of seventy eight days after the adjournment of the levy term in preparing the list, did not render the grand jury selected from such list an unlawful or improperly constituted grand jury or vitiate the indictment returned by such grand jury. Especially is this so where, as in this instance, the persons selected for grand jury service were competent and qualified for such service and the failure and the delay upon the part of the jury commissioners in connection with their selection did not result in any prejudice to any right of the defendant.

Under the foregoing authorities and for the reasons stated, the provision of Section 2, Article 2, Chapter 52, Code, 1931, that the jury commissioners "shall, at the levy term of the county court each year, and at any other

time when required by the court which appointed them, or the judge thereof in vacation, prepare a list of not less than one hundred nor more than two hundred qualified persons of their county, for grand jury service," in requiring the preparation of such list is mandatory and strict compliance with that requirement is essential to the selection of a lawful grand jury, but, in specifying the time at which such list is to be prepared and the maximum number of qualified persons whose names are to be placed upon it, the provision is directory and substantial compliance with those requirements is sufficient in the selection of a lawful grand jury. See *State* v. *Gory*, 142 W. Va. 5, 93 S. E. 2d 494; *State* v. *Jaranko*, 142 W. Va. 1, 93 S. E. 2d 537; *State* v. *Cirullo*, 142 W. Va. 56, 93 S. E. 2d 526; all of which were decided at this term of this Court.

It should be emphasized, however, that in holding that the grand jury which returned the indictment was a lawfully constituted grand jury and that the indictment was not vitiated by the irregularity in its selection, this Court does not overlook or sanction the palpable neglect upon the part of the jury commissioners in failing to perform fully and promptly the duty imposed upon them by the statute. On the contrary their apparent indifference and their tardy action are expressly disapproved. Meticulous care should be exercised to comply with all the requirements of the statute by those charged with that duty and even a technical or harmless disregard of such requirements should be scrupulously avoided.

The authorities in different jurisdictions are conflicting on the question whether jurors are disqualified to serve in a criminal case by reason of their prior jury service in the trial of another defendant charged with a similar but independent criminal offense when the same witnesses are used by the prosecution to establish the similar but disconnected criminal act. Though this question has not been considered or determined in any prior decision of this Court, the view that such jurors are not disqualified by their prior service in such circumstances

is supported by the decisions of appellate courts in several jurisdictions. *Wilkes* v. *United States,* 291 F. 988, C.C.A. 6th Circuit, certiorari denied, 263 U. S. 719, 44 S. Ct. 181, 68 L. ed. 523; *Haussener* v. *United States,* 4 F. 2d 884, C.C.A. 8th Circuit; *Belvin* v. *United States,* 12 F. 2d 548, C.C.A. 4th Circuit, certiorari denied, 273 U. S. 706, 47 S. Ct. 98, 71 L. ed. 850; *State* v. *Conner,* 59 Idaho 695, 89 P. 2d 197; *Ladner* v. *State,* 148 Miss. 243, 114 So. 341; *State* v. *Russell,* 73 Mont. 240, 235 P. 712; *Rose* v. *Commonwealth,* 106 Va. 850, 56 S. E. 151; *Fletcher* v. *Commonwealth,* 106 Va. 840, 56 S. E. 149; *State* v. *McMillan,* 154 Wash. 29, 280 P. 737; *State* v. *McDonald,* 114 Wash. 696, 195 P. 1048; *State* v. *Van Waters,* 36 Wash. 358, 78 P. 897. See 160 A.L.R., Annotation II, 4(b), pages 767 to 771.

In *Wilkes* v. *United States,* 291 F. 988, certiorari denied, 263 U. S. 719, 44 S. Ct. 181, 68 L. ed. 523, the court said: "Some of the jurors in attendance upon the session had been present in court during the trial of other cases of the general group referred to, and some had sat in some of the other cases. Defendants moved to dismiss the array, and for a new array of jurors, for the reasons just stated, coupled with the proposition that the evidence being similar to the evidence in this case such jurors had passed upon the credit or lack of credit of Taylor and his wife, and had formed or expressed opinions as to the whole series of cases growing out of the indictments in question. Whether or not the practice of moving to dismiss the array was the proper one, it was not error to deny the motion. There was under it no showing of fact that the jurors had either formed or expressed opinions as to the merits of the instant case. There is no presumption of law that they did do so, nor any presumption that a juror who has heard the evidence in one of the cases, or even sat in one or more cases, will be other than impartial in another case merely because it is of the same general type. Each case involved differing conditions and questions of credibility on the part usually of different defendants, and the credibility of

both Taylor and his wife was required to be weighed not only upon the facts of the individual case, but as between these witnesses and different defendants. Cf. 16 R.C.L. p. 260. Plaintiffs in error cite no authority in support of their contention, which we think plainly not well made. In fact, however, upon the subsequent examination of the jurors, upon their voir dire, each of those who had been present during the former trials testified, either directly or in effect, that he could try this case fairly and impartially, giving the defendants the presumption of innocence until proven guilty beyond a reasonable doubt. The competency of the individual jurors was addressed to the sound discretion of the trial court. *Hopt* v. *Utah,* 120 U. S. 430, 432, 7 Sup. Ct. 614, 30 L. Ed. 708; *Texas & Pacific Ry.* v. *Hill,* 237 U. S. at page 214, 35 Sup. Ct. 575, 59 L. Ed. 918; *Detroit, M., etc., Ry. Co.* v. *Kimball* (C.C.A. 6) 211 Fed. at page 633, 128 C.C.A. 565; *Badders* v. *Burnham* (C.C.A. 8) 228 Fed. at page 472, 143 C.C.A. 52. No abuse of discretion is shown."

In *Haussener* v. *United States,* 4 F. 2d 884, the opinion contains these statements:

"Five jurors who sat in this case had theretofore sat in other cases, against other persons, charged with some violation of the Volstead Act, wherein one or both of the government prohibition agents testifying in this case had also been witnesses. Touching the qualifications of these jurors it developed upon their voir dire examination that some of them had formed and still had a certain opinion as to the credibility of these prohibition agents; but these jurors said, in substance, that they could try the case in the same fair state of mind as they could have done if these witnesses had been strangers, and if they had never heard them testifying in other cases.

"The situation thus presented is novel and anomalous, and it is too plain for argument that no such procedure ought to be held reversible error, unless in the presence of an examination which shows that the attitude of the jurors is such as to preclude a fair and impartial trial,

beyond cavil or question. This is so, because in the very nature of the situation practically all prosecutions for violations of the Volstead Act (Comp. St. Ann. Supp. 1923, §§ 10138 1/4 et seq.) must be bottomed upon the testimony of prohibition agents. If, when one case has been tried, the entire panel of jurors sitting therein is disqualified from sitting as jurors in every other case of a similiar sort, trial courts will be so far impeded in the transaction of their business as to make the enforcement of this act difficult, if not impossible. Such practice as was here resorted to, should be discouraged.

"We are not saying that, if the jurors had by their answers disclosed a state of opinion that would have prevented a fair and impartial trial, or an unprejudiced consideration of all of the evidence offered, that they would have been competent jurors; but it will be observed that no such state of mind is shown by the voir dire examination. The ingrafting into the criminal procedure of a novel practice like that here disclosed ought not be permitted, except in the face of a situation clearly showing the bias, prejudice, and lack of impartiality of the juror."

In *Ladner* v. *State,* 148 Miss. 243, 114 So. 341, the court used this pertinent language: "We do not think, in the absence of a showing, on the *voir dire* examination, that a juror was biased or prejudiced, or partial to the extent of not rendering a fair and impartial judgment, the mere fact that some witnesses had testified in the jurors' presence as to another crime at a different time and place would of itself render the panel incompetent; the fairness and the impartiality of the jury would be determined by the *voir dire* examination of each juror as to the state of his mind, and not as to his opinion on a different case."

In *Fletcher* v. *Commonwealth,* 106 Va. 840, 56 S. E. 149, the defendant was indicted for and convicted of an unlawful sale of intoxicating liquor. The court held that prior service, by members of the jury which found him guilty, as jurors at the same term of court in the trial of

similar offenses which were proved by the same witnesses was not a ground for reversal of the judgment rendered against the defendant. In discussing that point in the opinion the court said: " * * * there is nothing whatever to show that he was not tried by an impartial jury, and the mere fact that members of the panel had at the same term of the court tried similar cases proved by the same witnesses who testified against him does not of itself constitute error."

As previously indicated, the careful and thorough examination of the members of the panel of twenty jurors on their *voir dire* by the judge of the criminal court did not disclose that any of the members of the panel, including those challenged for cause by the defendant, entertained any bias, prejudice, or partiality toward the defendant, or had formed any opinion of his guilt or innocence, or had assumed an attitude which would prevent any of them from giving the defendant a fair and an impartial trial or from rendering a just verdict based upon the evidence in the case. In the absence of any showing that the jury was not an impartial jury, this Court should not disturb the discretion exercised by the trial court in determining the question of the eligibility of the members of the jury to serve as such and should not reverse its finding that the jurors were free from bias, prejudice, or partiality and were competent to serve in that capacity.

In *State* v. *Toney*, 98 W. Va. 236, 127 S. E. 35, this Court held in point 1 of the syllabus that: "Where the questions propounded by the trial court are sufficient to test a juror's ability to completely disregard anything he may have heard and read about the case, and to give the defendant a fair and impartial trial, and his answers are so unequivocal and satisfactory as to convince the trial judge of the juror's fairness and impartiality, it is the settled practice not to interfere with the court's finding, unless clearly against the evidence." To disqualify a venireman his opinion must be substantial and not a mere impression which will not interfere with his fairness.

*McCue* v. *Commonwealth,* 103 Va. 870, 49 S. E. 623; *Rust* v. *Reid,* 124 Va. 1, 97 S. E. 324.

When it appears that a juror in a subsequent criminal case can fairly and impartially act and render a just verdict upon the evidence adduced at the trial, he is not disqualified to serve as such in the subsequent case merely by reason of his service as a juror or his presence as a spectator at a prior trial of a different defendant charged with a different but similar offense, although the evidence is similar and the witnesses in behalf of the prosecution are the same in each case.

The testimony, elicited from the defendant on cross-examination concerning his statements to the effect that he had not been in charge of the Boots and Saddle Club after the first or the second week in August, 1953, in which, though admitting his arrest in his restaurant, he denied that he was arrested while coming out of the doorway of that club with four bottles of whisky by Chief Deputy Matt Minard on the night of November 4th, and denied that on that occasion he had a conversation with Minard in which the defendant told him that he was in charge of the club, was admissible for the purpose of impeaching the credibility of the defendant. When an accused testifies in his own behalf his credibility may be attacked in the same manner as the credibility of any other witness. In laying the foundation for the impeachment of a witness by his prior inconsistent statement, it is necessary and proper that he be informed of the alleged inconsistent statement and the circumstances under which it is charged to have been made with sufficient certainty to enable him to identify the particular occasion. This was done by the questions propounded by the prosecuting attorney in his cross-examination of the defendant and, although reference was made to the arrest of the defendant when in possession of four bottles of whisky, that fact was connected with and was incidental to the time, the place, and the person involved on the occasion in question. The extent of the cross-examination of a witness is a matter within the sound discretion of the

trial court; and in the exercise of such discretion, in excluding or permitting questions on cross-examination, its action is not reviewable except in case of manifest abuse or injustice. *Nees* v. *Julian Goldman Stores*, 109 W. Va. 329, 154 S. E. 769; *State* v. *Wolfe*, 99 W. Va. 694, 129 S. E. 748; *State* v. *Porter*, 98 W. Va. 390, 127 S. E. 386; *State* v. *Prater*, 52 W. Va. 132, 43 S. E. 230. The testimony elicited by the questions propounded by the prosecuting attorney in cross-examining the defendant were, of course, admissible only for the purpose of impeaching his credibility and, upon objection by his attorney and at the instance of the prosecuting attorney, the court so instructed the jury.

The testimony of Minard, offered by the State, in rebuttal, that on the occasion in question he arrested the defendant while he was coming out of the doorway of the club with four bottles of whisky and that he then had a conversation with the defendant in which he told the witness that he was in charge of the club was likewise admissible for the purpose of impeaching the credibility of the defendant. The action of the trial court in admitting the foregoing evidence for that purpose only and not as evidence concerning the guilt or the innocence of the defendant was not prejudicial to the defendant and did not constitute reversible error. In point 4 of the syllabus in *Jaggie, Adm'r.* v. *Davis Colliery Company*, 75 W. Va. 370, 84 S. E. 941, this Court said: "Contradictory statements by a witness, as to material facts, are admissible in rebuttal for the purpose of weakening or destroying the value of his testimony, provided the foundation therefor has been laid by proper cross-examination, but are not admissible as primary evidence of the controverted fact." A witness may be impeached by proving that on another occasion he made statements inconsistent with or contradictory of his statements upon the trial, if those statements are material. *State* v. *Koch*, 75 W. Va. 648, 84 S. E. 510; *State* v. *Goodwin*, 32 W. Va. 177, 9 S. E. 85.

The contention of the defendant that the court should

have directed the jury to return a verdict in favor of the defendant on the ground that the State had failed to prove that the defendant did not have a license to dispense intoxicating liquor or that he was without authority to do so under the Liquor Control Act is devoid of merit. The State was not required to prove that the defendant did not have a license to sell intoxicating liquor or did not have authority to do so under that statute. When a sale of intoxicating liquor has been proved it is presumed that it was made without license or authority; and to justify such sale the defendant must produce his license or authority. *State* v. *Tygarts Valley Brewing Company*, 71 W. Va. 38, 75 S. E. 149. In that case this Court held, in point 1 of the syllabus, that: "On an indictment for unlawfully selling spirituous liquors without a state license therefor, it is not incumbent on the state to prove that defendant had no license to sell. If a sale be proven, it is presumed to have been made without license, and, to justify it, defendant must produce his license." See also *State* v. *Merico*, 77 W. Va. 314, 87 S. E. 370.

The defendant complains of the action of the trial court in denying his motion to set aside the verdict and grant him a new trial on the ground that the verdict is contrary to the law and the evidence and is not supported by the evidence. The action of the trial court in refusing to grant the motion did not constitute error. As already indicated, the evidence upon the issue of the guilt or the innocence of the defendant is conflicting. When the fact of guilt or innocence depends on the conflicting evidence of witnesses to the crime, the jury is the sole judge of the weight and the credibility to be given to their testimony. *State* v. *Scurlock*, 99 W. Va. 629, 130 S. E. 263; *State* v. *Harlow*, 137 W. Va. 251, 71 S. E. 2d 330; *State* v. *Magdich*, 105 W. Va. 585, 143 S. E. 348; *State* v. *Stewart*, 63 W. Va. 597, 60 S. E. 591; *State* v. *Kidwell*, 62 W. Va. 466, 59 S. E. 494, 13 L.R.A., N.S. 1024. See also *State* v. *Spradley*, 140 W. Va. 314, 84 S. E. 2d 156; *State* v. *Stalnaker*, 138 W. Va. 30, 76 S. E. 2d 906; *State* v. *Mayle*, 136 W. Va. 936, 69 S. E. 2d 212; *State* v. *Sullivan*, 55 W. Va.

597, 47 S. E. 267; *State* v. *Cooper*, 26 W. Va. 338. The evidence is sufficient to lead the jury to believe, beyond reasonable doubt, that the defendant was guilty of the unlawful sale of the whisky as charged in the indictment and to justify his conviction of that offense; and the finding of the jury on that issue will not be disturbed by this Court. *State* v. *Reppert*, 132 W. Va. 675, 52 S. E. 2d 820; *State* v. *Male*, 103 W. Va. 355, 137 S. E. 751. A new trial will not be granted in a criminal case on the ground that the evidence is insufficient, when the verdict against the defendant is based on conflicting oral testimony and the credibility of witnesses is involved. *State* v. *Spradley*, 140 W. Va. 314, 84 S. E. 2d 156; *State* v. *Stowers*, 66 W. Va. 198, 66 S. E. 323. "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." Point 1, syllabus, *State* v. *Bowles*, 117 W. Va. 217, 185 S. E. 205; point 10, syllabus, *State* v. *Cirullo*, 142 W. Va. 56, 93 S. E. 2d 526; point 1, syllabus, *State* v. *Spradley*, 140 W. Va. 314, 84 S. E. 2d 156; point 3, syllabus, *State* v. *Lewis*, 133 W. Va. 584, 57 S. E. 2d 513; point 1, syllabus, *State* v. *Reppert*, 132 W. Va. 675, 52 S. E. 2d 820; point 2, syllabus, *State* v. *Hacker*, 130 W. Va. 91, 42 S. E. 2d 559. See also *State* v. *Taylor*, 130 W. Va. 74, 42 S. E. 2d 549; *State* v. *Holmes*, 125 W. Va. 97, 23 S. E. 2d 61; *State* v. *Gunter*, 123 W. Va. 569, 17 S. E. 2d 46; *State* v. *Barkoski*, 96 W. Va. 265, 122 S. E. 654; *State* v. *Price*, 94 W. Va. 644, 119 S. E. 874; *State* v. *McLaughlin*, 91 W. Va. 654, 114 S. E. 278; *State* v. *Cook*, 81 W. Va. 686, 95 S. E. 792; *State* v. *Stewart*, 63 W. Va. 597, 60 S. E. 591; *State* v. *Henry*, 51 W. Va. 283, 41 S. E. 439.

It is unnecessary to discuss the numerous contentions

of the defendant, relating to the admission and the rejection of certain evidence, the giving of the two instructions offered by the State, and the refusal of certain instructions offered by the defendant in their unmodified form, except to say that careful review and consideration of each of these matters show that the trial court did not commit error, justifying reversal of the judgment of that court, in its rulings with respect to any of them.

As no reversible error appears from the record, the judgment of the circuit court, refusing a writ of error, and the judgment of the criminal court are affirmed.

*Affirmed.*